## Dark *et al. versus* Johnston *et al.*

1. Where a conveyance was to be made of land, if the vendee should find oil upon it, it is to be construed that oil must be found within a reasonable time.

2. Oil, like water, is not the subject of property, except in actual occupancy.

3. A grant of water is not the grant of the soil on which it rests, and it passes nothing for which ejectment will lie.

4. It is essential to an easement that there should be both a dominant and servient tenement.

5. Generally a parol license is revocable at the will of the licensor; and it is revocable although a consideration has been paid for it.

6. Even a parol license executed, may become an easement on the land, and where acts have been done in reliance upon a license, the licensor will be estopped from revoking it to the injury of the licensee.

7. A license is a personal privilege and is not assignable; an assignment by a licensee determines his right.

8. McGuire granted to Baird a right to sink one or more wells on his land; and agreed to convey to Baird, if oil was found; also to grant him an exclusive right to sink wells on other land at $100 for every 10 years for every well Baird may continuously pump oil from; if he should fail to find oil, to have the right to remove his machinery, &c.; if oil were found, the right to pump to continue as the rent should be paid. *Held*, 1. To be a license to Baird. 2. That Baird having made improvements, McGuire could not revoke the license as to him. 3. That Baird having assigned the license, it was determined.

March 27th 1867. Before WOODWARD, C. J., STRONG, READ and AGNEW, JJ. THOMPSON, J., absent.

Error to the Court of Common Pleas of *Warren county.*

This was an action of ejectment, brought September 17th 1864, by William F. Johnston, Isaac M. Pennock, N. P. Sawyer, William Bagaley and S. A. Baird, against John Dark, Carlton B. Curtis, and others, for 250 acres of land and an island.

On the 26th day of November 1859, Samuel McGuire, being the owner in fee of the land in dispute, made the following agreement with Samuel Baird, reciting:

"That the said McGuire is the owner of a farm in Tideoute, in Deerfield township, Warren county, Pa., of about two hundred and fifty acres, more or less, running on the Allegheny river, and along and on both sides of the course of McGuire run, about one mile and twenty-six rods; and also an island in said river, opposite the homestead, of about nine acres. On this land petroleum or mineral oil may exist, and said McGuire is desirous of having it explored, and agrees to and with said Baird as follows, viz.:

"First. Said Baird, as full consideration for the right to sink one or more wells or pits on the island, and four trial wells or pits on the farm, pays to said McGuire one hundred dollars before commencing work; and should said Baird find oil on said island, then said McGuire agrees to sell to said Baird the above described

island for the sum of five hundred dollars. The one hundred paid on commencing work to be part of said sum; the remaining four hundred to be paid on McGuire's giving him a warranty deed for said island in fee.

" Second. Said McGuire covenants and agrees with said Baird to grant him an *exclusive right* to sink wells and pits for obtaining mineral oil over the rest of said estate, on the following terms and conditions, viz.: one hundred dollars for each and every period of ten years (ten dollars per year), for each and every well or pit that said Baird may *continuously* pump oil from; the continuous pumping of said oil to be the evidence that such wells or pits are used. The rent for each and every well shall be paid yearly.

" It is understood and agreed, on the part of said Baird, that he will not, in boring or sinking such wells or pits, or in erecting the necessary buildings and apparatus to obtain, and refine or prepare for market said oil, injure any part of said farm valuable as pasture or tillable; and that any fences interfered with shall be restored into good condition.

" It is further understood and agreed between the parties to this instrument, that in case the said Baird shall fail to find rock oil on either the island or farm aforesaid, then he shall be at full liberty to remove any buildings or machinery he may have put up, and the one hundred dollars paid to McGuire shall be in full of every demand.

" And further, should oil be found, then the right to pump oil from the wells shall continue as the said rent is paid, as before mentioned. For and in consideration of the above premises, we hereby bind ourselves and our legal representatives for and to the full performance of the above agreement in every part."

On the 2d of April 1861 McGuire conveyed the land to C. B. Curtis, Josiah Hall, and others. Under this conveyance the defendants claim.

There was evidence by the plaintiffs that Baird went into possession of the land, and commenced a well on the main land; gave some twenty leases, at about seventeen of which boring was commenced; that some of the wells went down hundreds of feet, and that $20,000 or $30,000 had been expended in boring, building, &c. Curtis, in 1861, brought an ejectment against Baird, who received notice from Curtis to quit, and left in June 1861. Some of the lessees quit for the war, and at last all left.

On the 29th of June 1864 Baird conveyed his interest to the plaintiffs, who then brought this ejectment.

The ejectment brought by Curtis against Baird, being on the trial list in December 1864, a nonsuit was taken.

Derrickson, A. J., charged the jury:—

" The point is, will the lease of McGuire to Baird warrant the

[Dark *v.* Johnston.]

bringing of an ejectment? It is dated November 24th 1859, and gives to the latter the exclusive right to explore and bore for oil on the other's farm and island. The lessee entered upon the land and commenced operations, which were continued until he left, under circumstances hereafter mentioned under the remaining question. Had there been no possession taken, it is more than questionable whether the ejectment could be sustained on the bare lease itself. But possession was essential to the lessee's discharge of what was required of him; and with it no interference of the lessor, or others under him, could deprive him of it, at least not until ample experiments had tested the non-existence of oil on the premises; or if he was interfered with improperly, and got out of possession, he could regain it by virtue of his lease and prior possession under it.          *          *          *          *

"With the lease, then, and the possession under it, and nothing else to prevent it, we charge that the plaintiffs are entitled to recover.

"It is contended, however, in the second place, that although the lessee commenced and continued his operations till the summer of 1861, he then left and abandoned the land, and has remained therefrom ever since. If he did voluntarily abandon the land and yield his rights under the lease, he is precluded now from regaining them; and this is for the jury to determine under the evidence."          *          *          *          *          *          *

The jury found for the plaintiffs, and the defendants assigned the following error, amongst others:—

4. The judge erred in charging the jury that "with the lease, then, and the possession under it, and nothing else interfering to prevent it, we charge that the plaintiffs are entitled to recover."

*S. Dickson* and *Brown & McKelvy*, for plaintiffs in error, cited Kier *v.* Peterson, 5 Wright 357; Caldwell *v.* Fulton, 7 Casey 475; Doe *v.* Wood, 2 B. & Ald. 719; Grubb *v.* Bayard, 2 Wall. 81; Riddle *v.* Brown, 20 Ala. 412; Chetham *v.* Williamson, 4 East 469; 1 Smith's Lead. Cas. 278; Norway *v.* Rowe, 19 Vesey 158; Hanley *v.* Wood, 2 B. & Ald. 724; Barrs *v.* Lea, 10 Jur. N. S. 996; Thomas *v.* Sorrell, Vaugh. 351; Wood *v.* Leadbitter, 13 M. & W. 838; Cort *v.* The Railway Co., 17 Q. B. 127 (79 E. C. L.); The R. W. Co. *v.* Xenos, 11 J. Scott N. S. (103 E. C. L.) 152; Herbert *v.* Laughlayn, Cro. Car. 492, s. p.; Molineux *v.* Molineux, Cro. Jac. 146; Waddy *v.* Newton, 8 Mod. 278; Loüx *v.* Buel, 9 Johns. 298; 16 Id. 184; Co. Litt. 184; Rex *v.* The Inhabitants of Old Alresford, 1 Term Rep. 358; Smith *v.* Barratt, Sid. 161, 1 Lev. 114; South *v.* Alleine, 1 Salk. 228; Cro. Eliz. 190; 3 Kent 452; Wood *v.* Lake, Sayers 3; Webb and Paternoster, Palm. 71; Howes *v.* Ball, 7 B. & C. 481; Jamieson *v.* Milleman, 3 Duer 257; D'Arnay *v.*

[Dark v. Johnston.]

Chesneau, 13 M. & W. 808; Short v. Kalloway, 11 A. & E. 28;
8 Metc. 34; 15 Ills. 397; Wallis v. Harrison, 4 M. & W. 538;
Coleman v. Foster, 37 E. L. & E. Rep. 489; Prince v. Case, 10
Conn. 375; 2 Am. L. C. 728; Cook v. Stearns, 11 Mass. 533;
Emerson v. Fisk, 6 Greenl. 200; Vandenburgh v. Van Bergen,
13 John. 212; Co. Lit. 45 (a) and Heyward's Case, 2 Rep. 36,
a, b; Note to Prince v. Case, 2 A. L. C. 737; Jackson v. May,
16 Johns. 184; 32 H. 8, c. 7; 3 Bl. Com. 206; Newman v.
Holdmyfast, Sh. 54; Stephens N. P. 1392.

*T. McConnell, R. Brown* and *Wetmore & Clark,* for defend-
ants in error, cited Kier v. Peterson, 5 Wright 362; Caldwell v.
Fulton, 7 Casey 475; Caldwell v. Copeland, 1 Wright 427; Jack-
son v. Buel, 9 Johns. Rep. 298; King v. Old Alresford, 1 Term
Rep. 358; King v. Stoke, 2 Id. 451; Streatfield v. Halliday, 3
Id. 772; King v. Tolpuddle, 4 Id. 671; Millington v. Goodlittle,
And. 106; Bryant v. Whipple, 1 Esp. 360; Burges v. Purvis,
1 Burr. 326; Drapers' Co. v. Wilson, 2 Starkie 477, 3 E. C. L.
R. 495; Remington on Ejectment 432; 1 Coventry and Hughes'
Digest, *Ejectment* V. b. 1; Smith v. Barrett, 1 Lev. 114; Port-
man v. Morgan, Cro. Eliz. 465; Booth v. Lord Cromwell, Sayer
28; Moore v. Van Bergen, 1 John's Cases 101; Seward v. Jack-
son, 8 Cowen 127; Paine v. York, 10 Humph. Tennessee Reps.
340; Tillinghast's Adams on Ejectment 21; Turner v. Reynolds,
11 Harris 199; Stoever v. Lessee of Whitman, 6 Binn. 416.

The opinion of the court was delivered, January 17th 1867, by
STRONG, J.—The agreement upon which the plaintiffs below
rest their right to recover in ejectment is singularly obscure. The
avowed motive that induced it was a desire of the owner of the
land that an exploration might be made to ascertain whether it
contained mineral oil. But what rights it was intended to give to
Samuel Baird, the explorer, it is difficult to determine from the
language used by the parties. And the difficulty is increased by
the fact that the stipulations respecting the island and those
respecting the farm are diverse, and yet they are mingled
together. So far as it relates to the conveyance of any interest
in the lands, the contract is executory. No doubt it amounts to
an engagement to sell the island on a certain contingency, but
there is no absolute covenant to sell. McGuire undertook to
make a conveyance of the island if Baird should find oil upon it.
To allow to the agreement a reasonable construction, it must, of
course, be held that the discovery of oil must be made within a
reasonable time. But what interest, if any, did McGuire agree
to give in the body of the farm? The plaintiff insists that the
agreement amounts to a sale of the oil itself; and that the oil
being a part of the land, is a corporeal hereditament, to recover

[Dark *v.* Johnston.]

possession of which ejectment will lie.  But if it be conceded that by the contract there was a grant of the oil, it by no means follows from that alone that ejectment is maintainable.  Oil is a fluid, like water, it is not the subject of property except while in actual occupancy.  A grant of water has long been considered not to be a grant of anything for which an ejectment will lie.  It is not a grant of the soil upon which the water rests: Coke Lit. 4, v.  It would confound all legal notions were it held that an action can be maintained for the recovery specifically of the possession of a subterranean spring or stream of water, no matter whether the waters are mineral or not.  There is a manifest difference between a grant of all the coal or ore within a tract of land, or even the grant of an exclusive right to dig, take and carry away all the coal in the tract (which we held in Caldwell *v.* Fulton to be a grant of a corporeal interest), and a grant of the waters in or on the tract.  The nature of the subject has much to do with the rights that are given over it, and to us it appears that a right to take all the oil that may be found in a tract of land, cannot be a corporeal right.  The contract in this case is in some particulars not unlike that under consideration in Clement *v.* Masser, or Youngman *v.* Walter, 4 Wright 341.  Like that it is the grant of an exclusive right, but no present consideration is agreed to be paid for the oil.  It contains no covenants of the grantee either to search for the oil or to become a lessee of wells on the main farm ; and what is exceedingly important, it provides for a future conveyance of the island and assurance of rights on the main land, in the event that oil should be discovered.  This provision is very clearly indicative of an intention that no present estate should pass, either corporeal or incorporeal.  If the agreement referred to in Clement *v.* Masser and Youngman *v.* Walter was correctly ruled to convey no corporeal hereditament such as is essential to the maintenance of an ejectment, much more must the contract here be held to be no grant of a corporeal interest, in any portion of the farm.  There is also no distinct assertion that Baird should have all the oil.  At most, his rights are made to extend only to so much as he might find.  McGuire does indeed covenant to grant an exclusive right to sink wells for obtaining oil, but even after the grant shall be made it is only for such wells as he shall continuously pump oil from, that the covenantee is to pay rent.  The only clause which expressly grants any right to take the oil is the last, and that is, " Should oil be found, the right to pump oil from the wells shall continue" as the rent is paid.  This surely is not a grant of all the oil.  Moreover, Baird is expressly authorized to remove his buildings or machinery, in case he fail to find oil.  This provision is unnecessary if a corporeal right was granted.  And the removal of buildings, &c., determine all rights under the contract.  In such

[Dark v. Johnston.]

a contingency the $100 paid are to be in full of every demand. These stipulations point to an intention that nothing more was in contemplation of the parties than a license before the proposed explorations should prove successful, and we think a license is all that Baird acquired. He obtained not even an easement on the land, for it is essential to an easement that there should be both a dominant and a servient tenement. But the right or privilege assured by this contract was not for any other tract of land, but solely for Baird himself.

Regarding, then, the agreement, not as a conveyance of corporeal estate, but as a license, we proceed to the consideration of its effect. Generally a parol license is revocable at the pleasure of the licenser, and it is none the less revocable because a consideration has been paid for it: Wood v. Leadbitter, 13 M. & W. 838. It cannot be doubted, therefore, that Maguire might have revoked the license in this case had it been given by parol at any time before Baird had expended labor or money on the faith of it, in prosecuting the explorations. By so doing he might have subjected himself to a liability to respond in damages, but his right to withdraw the permission given would have been inseparable from the nature of the arrangement. Here, however, the license was not parol, it was given by deed. It is not so clear that a license given by deed is revocable at the pleasure of the grantor. See the Law of Mines, Minerals and Quarries, by Arundel Rogers, a late English elementary treatise, p. 313. Without pausing to inquire how this may be, how stands the case when a license has not only been granted by deed, but acted upon, and when the licensee, on the faith of it, has made large expenditures? It must be admitted that the license to Baird authorized him to go upon the land, to bore or sink wells and to erect the machinery and buildings necessary for obtaining oil, or at least for ascertaining whether it existed on the land. The privilege included a right to occupy so much of the surface as was required to enable him to enjoy the main thing granted. These privileges, though not all expressly given, are plainly implied. They would be, were no reference made to them. They are, however, spoken of in such a manner as to leave no doubt that it was intended they should go with the right to sink wells. And the evidence given at the trial shows that in the enjoyment of his license Baird did occupy portions of the land, that he expended a large sum of money in sinking wells, and the verdict of the jury establishes that there has been no abandonment.

It has been held in this state that even a parol license executed may become an easement upon the land, and that when acts have been done by one party in reliance upon a license granted to another, the latter will be equitably estopped from revoking it to

[Dark *v.* Johnston.]

the injury of the former: Lefevre *v.* Lefevre, 4 S. & R. 241; Reßick *v.* Kern, 14 Id. 267; Lacy *v.* Arnett, 9 Casey 169. These are cases, it is true, where the license was not personal, but where a servitude had been imposed for the benefit of another tenement. In them an easement was allowed in favor of the dominant tenement, appurtenant to it, and passing with it to a grantee of the license, as held in McKellip *v.* McIlhenny, 4 Watts 317. The same reasons which were controlling in these decisions appear to us to be applicable to the present case. Admitting, as we must, that we are not to confound the contingent covenant to sell the island, and to accept Baird as a tenant of wells on the main land, with the antecedent rights given to explore, we have still the facts that under the license to explore he was in possession of certain portions of the land, that such possession was authorized, that in taking it and continuing it large expenditures had been made, and that neither the occupancy itself nor the right to maintain it has ever been abandoned. Add to this the fact that if oil should be discovered as a result of his search, Baird was assured that he would be entitled to a conveyance of the island and a lease of wells on the main land, and it would seem grossly unjust in McGuire to make all his expenditures fruitless to him, and by revoking the license deprive him of the right, the expectation of which induced his expenditure. If in Lefevre *v.* Lefevre, there was enough to raise an estoppel and prevent the licenser from denying to the licensee the fruit of his expenditure, there surely is in this. Taking the occupancy of so much land as was necessary for the allowed explorations as was authorized, it was authorized for a consideration, and so was the continuance of the occupation. Call this what we may, an easement, which is an incorporeal right, or a temporary right to possession, defeasible, and ended when it shall be ascertained that the land does not contain oil, it was not for Mr. McGuire to take it away. Neither his conveyance of the land nor a re-entry by himself, could deprive Baird of the rights obtained by him in virtue of the license and the action under it.

If, therefore, the case stood upon this ground alone, we should be of opinion that the plaintiffs below were entitled to recover the possession of so much of the island and farm as the licensee had taken the occupancy of for the purpose of sinking wells and ascertaining whether oil is to be found. Thus far the disseisin of McGuire or his grantees would be regarded unlawful, and we should feel ourselves justified in sustaining an ejectment to restore a possession wrongfully taken away.

But this ejectment was brought by the grantees of Baird, not by himself. We are, therefore, brought to a consideration of the effect of his grant. Looking to the contract, it is plain the license

[Dark v. Johnston.]

was a personal privilege. It was given to Samuel Baird, and not to his assigns. And it was a privilege to be enjoyed exclusively on the land of McGuire. It was not for the benefit of any other tenement. It was not appurtenant to any other lands, but it belonged exclusively to the person of the grantee. This is affirmable not only of the right to explore but of the right to occupy lands for the purpose of exploration. The latter is only an incident of the former. It is but adjutory of the former. When the right to search for oil is gone, the right to occupy land for such a search is gone with it. That a license is a personal privilege, and not assignable, is a well-settled principle. It is induced almost always by confidence in the character of the licensee. A man may well accord a privilege upon his lands to one person, which he would refuse to all others. Hence it is held that a personal license is not assignable, and that an assignment by a licensee determines his right. Though a licenser may be estopped from recalling the privilege granted, the licensee may destroy it. He may abandon or release. He cannot substitute another to his right. The cases are numerous in which it has been held that his assignment puts an end to the license: The King v. Hewton, Bridg. 115; Hull v. Babcock, 4 Johns. 418; Prince v. Case, 10 Conn. 375; Emmerson v. Fisk, 6 Greenl. 200. It is true that in Muskett v. Hill, 5 Bing. N. C. 694, it was ruled that a license to search for and raise metals, and also to carry them away and convert them to the licensee's own use, passes an interest capable of being assigned. But in that case the license was by indenture, it was given to the licensees, their executors, administrators and assigns, and the indenture contained an express provision that the license and authority should be assignable by deed. The case, therefore, is not in conflict with the rule that a personal license is not assignable, in which respect it differs from a grant which carries an interest. Whatever, therefore, might have been Baird's rights had he retained the privilege given to him by the agreement, his grantees cannot recover in ejectment.

This view of the case dispenses with the necessity of considering any other than the 4th assignment of error.

The judgment is reversed.