Opinion by
 

 Cunningham, J.,
 

 The subject matter of the litigation which gave rise to this appeal is the existence, and right of plaintiffs to use, a 12 foot alley opening into the east ^ide of the Meyersdale north and south public road in Summit Township, Somerset County, and extending eastward, approximately 130 feet, between the lot on the north owned by entireties and occupied by Abraham L. Wedge and his wife, Sarah J. Wedge, two of the plaintiffs, and the lot on the south, owned by entireties and occupied by Irvin Schrock and his wife, Nettie Schrock, the defendants, to an unimproved tract of about fifteen acres, owned and used for pasture by John A. Glessner, the other plaintiff, which latter tract bounds both the Wedge and Schrock lots on the east.
 

 
 *427
 
 It is not controverted that when the Wedges and Schrocks are given the full frontage of their lots on the Meyersdale road there remains a strip of land 12 feet in width running east and west between their properties and extending to the Glessner tract in the rear thereof.
 

 The ultimate inquiry is whether the Wedges and Glessner are legally entitled to the unobstructed use of this 12 foot strip as a means of ingress and egress to and from their respective properties.
 

 In February, 1939, the Wedges and Glessner filed a bill in equity against the Schrocks averring: that the alley had been open for use by the public for a period “beyond the memory of any living man” and had “always been used as an appurtenance to the respective lands of the plaintiffs and of the defendants and their predecessors in ownership, without let or hindrance”; that during the year 1938 defendants began to challenge and obstruct plaintiffs’ free use thereof by placing therein “lumber,” “large timbers” and “a pile of ashes” and barricading it by the erection of a “wooden gate” which was chained and locked; and that defendants persistently refused to remove the obstructions upon request.
 

 In their answer the Schrocks denied the Wedges ever acquired “any easement or right by prescription, or otherwise” in the 12 foot strip and averred that any ,use thereof by Glessner had been permissive.
 

 The trial before the chancellor, Boose, P. J., resulted in a final decree that the defendants be “perpetually enjoined and restrained from obstructing said alley in any manner whatsoever, and from interfering with the plaintiffs’ free and unrestricted use and enjoyment of the same.”
 

 Under the assignments supporting the appeal of the defendants from that decree we have before us these questions of law: 1. Are the findings of fact supported by sufficient competent and substantial evidence? 2. If
 
 *428
 
 so, do the facts as found warrant the legal conclusions drawn by the court below?
 

 1. The common source of title of the owners of the properties involved in this case was Elias F'ike. In December, 1891, he conveyed the northern lot, now owned by the Wedges, to William Sipe and through four mesne conveyances the title vested in the Wedges in 1922. In 1897, he conveyed the southern lot, now owned by the Schrocks, to Frank W. Boyd and his wife. Through two mesne conveyances the title to this lot vested in John A. Glessner (one of the plaintiffs, and, as above indicated, the owner of the fifteen acre tract in the rear of both lots) who in 1927 conveyed this lot to Schrock and his wife, the appellants herein.
 

 With the exception of one matter, about to be referred to, there is nothing in the descriptions contained in tihe various deeds which requires detailed consideration. Counsel for appellants contend their clients had at least an absolute right to exclude the Wedges from any use of the southern half of the alley. Their proposition is based upon the fact that when the Boyds conveyed the southern lot in 1902 to an intervening owner (Warnbaugh) they reserved “a private road way 12 feet wide running from the Meyersdale public road along the land of William Sipe [conceded to be the land now owned by the Wedges] to the Elk Lick Creek for ,t|he use of John Glessner and the grantee (Wambaugh), his heirs and assigns.” Glessner acquired title to the southern lot in 1906 and when he conveyed it to appellants in 1927 his deed contained the following paragraph: “There shall pass along with this grant a small parcel of land adjoining the above parcel on the north, and running in an easterly direction, of an equal width of six feet, along said parcel 129 feet, and is now used as a private alley.”
 

 As to the plaintiff, Glessner, they suggest that when he acquired title to the southern lot the easement he had theretofore enjoyed in the alley was extinguished, upon
 
 *429
 
 the principle that when the same person becomes the owner of the dominant and servient estates ex-tinguishment occurs; hence, their argument that any use thereafter by Glessner was permissive. They overlook the further proposition that this is true only where there is no intervening or outstanding interest or title held by some other person in or to the easement: 9 R. O. L. 808, Section 64. Nor can the above quoted recital in the deed from Glessner to appellants amount to anything more than the conveyance of the fee in the southern half of the bed of the alley, coupled with notice that it was being used as a private alley.
 

 We, therefore, proceed to a consideration of the findings of fact of the chancellor and the evidence by which the plaintiffs sought to establish a prescriptive right to the unobstructed use of the alley. No exceptions were taken to the first nine findings which relate to a description of the properties involved, the respective transfers of title, and the reservations and grants to which we have referred. Findings 10 to 15 inclusive are assigned for error. They were substantially as follows:
 

 10. The 12 foot alley was in existence and open to public use for more than 21 years prior to the filing of the bill. 11. The parties continued to use the alley for hauling coal and wood to their respective premises, and others used it in passing to and from Glessner’s land located behind the other two lots, hauling ice and crops and driving pasturing cattle thereover. 12. The location and width of the alley were well defined by physical landmarks and appellants’ deed described the frontage of their lot and its depth along the alley without including the latter. 33. Actual measurement and survey disclosed that both the Wedges and the Schrocks have the frontage specified in their deeds, exclusive of the 12 foot alley. 14. About 1908, the erection of a street railway, paralleling the public road, along the rear of the two lots separated by the alley, made the same unfit as a thoroughfare for teams beyond its june
 
 *430
 
 tion with the railway, at which point a passenger platform was constructed, but the alley remained open to the crossing and was used by the abutting owners and the public as a means of access to the railway, and Glessner and others continued to drive cows through the alley to his pasture land and for other purposes, without hindrance or interruption until obstructed by appellants. 15. From about May 8, 1939, appellants have obstructed plaintiffs’ use of the alley by erecting a barbed wire fence lengthwise therein, barring the entrance with a gate and wire, depositing ashes and posting signs forbidding trespassing therein “and otherwise preventing the plaintiffs and the public from the accustomed and long-continued use of said alley.”
 

 Our review of the evidence has satisfied us that the findings of the chancellor are sustained by competent and substantial evidence. References to a private roadway, 12 feet wide, contained in the Boyd, Wambaugh and Glessner deeds in appellants’ chain of title, indicate the existence and use of the alley as far back as 1902. One of the plaintiffs, Glessner, over eighty years of age, testified he had travelled the alley in 1872 or 1873; that it was then a public road, and that he later sold a right of way for a street railway which ran across the eastern end of the alley. Referring to the use then made of the alley, Glessner testified: “Q. But did the people use the alley to get to the street railway? A. Of course....... Q. How was it used in connection with the people riding on the street car? A. The passengers got off and on. Q. The people coming from the public road used this alley? A. Sure, to get on. Q. Was that a regular stop for the street railway? A. Yes, sir; they asked if I would allow them to put a platform there? Yes, sir, I said, leave room enough for my cows. And there was a platform along there, right at the alley, yes, sir, right on the track and along the alley about six feet; they gave me room to drive my cows over, and of course, everything was all
 
 *431
 
 right.” Glessner also testified he had used the alley for driving cows to pasture since about 1904; that at the time of the hearing he had only one cow and had given Norman Gnagey pasture for the latter’s cow for driving Glessner’s and that these cows were driven down the alley before it was closed by the locking of a gate by Irvin Schrock about a year previous. As to continuity of use, Glessner testified the alley had never been closed to travel since 1875 until the present interference with its use by appellants.
 

 Joseph Ebaugh stated he had known of the alley’s existence for thirty-five to forty years; that it had been used for hauling limestone, as an approach to the street car line, for driving cattle to pasture, for getting coal and wood to the adjacent properties, and after the abandonment of the street car line it was “open to everybody.”
 

 B. J. Smith testified he had lived on the southern lot from 1912 to 1927, during which time the alley was used for driving cattle and delivering coal, as well as by the public, and that the mouth of the alley had never been obstructed.
 

 J. W. Austin, who had lived on the southern lot from 1904 to 1907 testified the alley had been used for hauling coal, etc., and that “Mr. Glessner would drive his cows down there.”
 

 An eighty-four year old witness, O. M. Gnagey, testified he had known of the alley for about sixty-five years and used to haul limestone through it; he added that “the farmers used it......whenever they went to town they went down there.”
 

 Mrs. W. O. Saylor, seventy-seven years of age, stated she had known of the alley for forty-two years, during which period it was always open and used by the public. Lloyd Peck testified he had knowledge of the alley since 1884 and had hauled ice through it from the creek in the rear.
 

 Abraham L. Wedge, one of the plaintiffs, testified he
 
 *432
 
 and Ms wife had lived upon their property for seventeen years; that the alley had been open during that period until it was closed off by the shutting ,of a gate about eight months before the hearing; he had used it for getting coal to his coal house until the latter was moved about two years before and also used it for “what we needed for our basement”; that the Schrocks also used it for hauling coal and the plaintiff, Grlessner, used it to drive cows to pasture. Mrs. Wedge corroborated her husband’s testimony, stating they had used the alley “all along till just about eight months ago”; besides using it for putting in coal a Mr. Weiland used it to haul cabbages from the Wedge garden and it was used for parking and washing the Wedge automobile.
 

 As to the twelfth finding, we note that Mr. Wedge testified there was a post on each side of the entrance to the alley and “a couple of u brands of some wire” marking the line of his lot from the post along the alloy extending for the full depth of the lot; there was also a hedge along the front of the property beginning at the post, and an apple tree, coal house and smoke house bordered fhe Schrock side of the
 
 alley¡,
 
 where a fence had been located until the previous September.
 

 Colwell Younkin, the county surveyor, Justified he made a survey of the properties in August, ¡1938, which disclosed that the Wedge and Schrock lc_t£j were divided by an alley about
 
 12
 
 feet wide and that both properties have the frontage called for by their respective deeds without including the alley.
 

 As to the obstructions, Mr. Wedge testified a gate built of boards was hung by Irvin Schrock upon the post on the Wedge side of the alley without the latter’s consent but that it was not kept closed continuously until about eight months prior to the hearing; later Schrock moved it over upon his property and with the assistance of Clarence Schrock erected a barbed wire fence lengthwise “down through the alley” extending beyond the Wedge lot which ran 138 feet; this fence
 
 *433
 
 narrowed down the portion of the alley between it and the fence along the Wedge property line to from fifteen inches at one point to three feet five inches at another, effectually excluding Wedge from his own property. Furthermore, he testified he saw the Schrocks empty ashes in the alley and that at different times they put up a “no trespass” sign in the alley. Mrs. Wedge corroborated this testimony and added that the wire fence along the length of the alley had been erected on May 6, 1939, after the institution of this suit.
 

 There was some evidence by and on behalf of appellants to the effect that there had been a gate at the entrance of the alley from time to time.
 

 Any conflicts in the testimony were, of course, for the chancellor and in the light of such testimony as we have summarized above his findings cannot be disturbed.
 

 The real genesis of this unfortunate controversy between neighbors crops out in the testimony of appellants. The gate was locked by them about eight months before suit was instituted because the boy who drove cows through the alley for Norman Gnagey continually left the gate open, and when reprimanded, challenged appellants’ right to control it. After it was locked, Gnagey knocked down the gate with an axe and sledge. This conduct seems to have provoked appellants to the point of proceeding to obstruct the alley by the various other means hereinbefore discussed. However impulsive and unjustifiable Gnagey’c action may nave been, it clearly did not justify appellants in interfering with the use of the alley by the plaintiffs and the public, if they possessed that right, as a matter of law.
 

 2. The conclusion of law arrived
 
 at
 
 by the chancellor to the effect that the free, uninterrupted and long-continued use of the alley by the plaintiffs and their predecessors in title had ripened into a prescriptive right, is supported by well established legal principles.
 

 We adopt the following excerpt from his discussion: “The law is clear and well established that the right to
 
 *434
 
 the use of an alley or way over another’s land is presumed from a continuous, uninterrupted use of the same under a claim cf right for twenty-one years or longer:
 
 Worrall v. Rhoads,
 
 2 Whart. 427;
 
 Pierce v. Cloud,
 
 42 Pa. 102;
 
 Plitt v. Cox,
 
 43 Pa. 486. The evidence conclusively shows that the plaintiffs and their predecessors in title, and the public generally, have had tho free and unobstructed use and enjoyment of the alley in controversy for more than twenty-one years, — probably as long as sixty years, — before the same was obstructed by the defendants. As early as September, 1902, the deed from Frank W. Boyd and wife to Frank Wambaugh, which is a link in the defendants’ chain of title, recognized the existence of this alley. The origin of the existence of the alley is so remote that no living person can tell when and how it was first created. Without evidence to explain how it began, the enjoyment of a way over another’s land is presumed to have been in pursuance of an unqualified grant, and the burden of showing tho contrary is upon the party denying the presumption:
 
 Garrett v. Jackson,
 
 20 Pa. 331;
 
 Pierce v. Cloud,
 
 42 Pa. 102;
 
 Hudson v. Watson,
 
 11 Pa. Superior Ct. 266.”
 

 We referred above to the provision in the deed from Glessner to appellants specifically conveying to them tho title to the southern six feet of the bed of the alley. They would have been entitled to that without specific mention and the Wedges hold title to the remaining sir feet; nevertheless, the owners of both lots and the public have the right to
 
 use
 
 the
 
 whole
 
 of the alley: “......a conveyance of land, bounded by or along an existing way, whether public or private, carries the title to the center of the way, subject, of course, to the public use of it as a highway, unless there bo something showing an intent to the contrary.”
 
 Oliver v. Ormsby,
 
 224 Pa. 564, 570, 73 A. 973.
 

 It follows from what has been said that the plaintiffs have a “right to the free and unobstructed use and en
 
 *435
 
 joyment” of the alley in question without “let, hindrance, or molestation” upon the part of appellants, and are entitled to he protected in the exercise of that right by the decree entered in the court below.
 

 The assignments of error are severally dismissed.
 

 Decree affirmed at the costs of appellants.