## Kosin v. Andersen et ux.

*J. S. Jiuliante*, for complainant.
*William W. Knox*, for respondents.

LAUB, J., June 3, 1947.—Plaintiff filed a bill in equity claiming an easement by prescription over a portion of the land of defendants. In her action she sought to compel defendants to remove a fence which they have placed in the passageway to which she claims

a prescriptive right. After hearing, the chancellor dismissed the bill and ordered complainant to pay the costs. Plaintiff filed exceptions to the chancellor's decree and the matter is now before us upon these exceptions.

The evidence adduced at the hearing clearly establishes the following: Plaintiff and defendants own adjoining pieces of real estate in the City of Erie and there is a dwelling house upon the land of each. Between the two houses is a passageway of approximately nine feet in width, slightly less than three feet of which is on the land of defendants. One of plaintiff's predecessors in title was Aloysius Mattis and one of the defendant's predecessors was John Kessler. Mattis and Kessler were brothers-in-law and, in 1919, Mattis requested Kessler to sell him a portion of his land lying between the two houses so that Mattis could build a garage in the rear of his premises and have access to it. Kessler refused to sell but gave Mattis permission to use his land as a driveway.

Mattis then built a garage on his own land, paved the driveway and used it until his death in 1925. Thereafter title passed to his wife and eventually the ownership vested in plaintiff. Upon Kessler's decease the property owned by him vested in his wife and eventually defendants became the equitable owners.

Upon proof of the origin of the use and that it was an indulgence by one landowner to another, the chancellor decided that the presumption of a grant which follows open, notorious and adverse user did not obtain. He further decided that there was no evidence of adverse user over the required period and that the use was open and notorious only. In support of his findings he cited Deeb v. Ferris et al., 127 Pa. Superior Ct. 489, 492, and Shinn et al. v. Rosenberger et al., 347 Pa. 504, 507. A careful reading of these authorities shows substantiation for his conclusions.

Plaintiff, despite her exceptions to the conclusions of law and findings of fact by the chancellor, has completely abandoned her original theory of adverse user. It is now her contention that the facts in this case establish an irrevocable license and thus she admits that, on the basis of prescription, the adjudication was proper. There has been no application for leave to amend the bill so as to include the present contentions.

We have serious doubts as to the propriety either of allowing an amendment if applied for or treating the bill as amended. Plaintiff throughout this case has relied upon adverse user to secure relief. At the trial her attorney insisted that such was her contention. In a colloquy during the hearing he stated: "We maintain, your honor, that there is a prescriptive right to use that space for the reason that it has been used for over 21 years." This thought is borne out by plaintiff's sixth exception which complains of the chancellor's first conclusion of law that "Plaintiff does not have an easement by prescription to use defendant's land as a passageway." It is further substantiated by plaintiff's first and third requests for conclusion of law. Both of these requests ask the court to declare the existence of an easement by prescription.

The present change of theory introduces an entirely new cause of action. Defendants came into court prepared to defend upon the cause alleged in the bill. They did not expect to meet, nor could they reasonably be required to anticipate, a claim of irrevocable license. While equity is lenient in the matter of amendments, it does not countenance the type of legal dexterity sought to be exhibited here. In Goslin v. Edmunds, 325 Pa. 154, 159, an equity case, the case of National Bank v. Lake Erie Asphalt Block Co., 233 Pa. 421, 428, was quoted with approval where it was said:

"When the defendant is brought into court to answer a claim made against him, he is entitled to know the plaintiff's cause of action that he may be prepared to

meet it. The purpose of pleading is to form a clear and distinct issue for the trial of the cause between the parties. The statement should be sufficiently explicit to enable the defendant to prepare his defense. A plaintiff cannot file a statement which avers one cause of action, and be permitted, on the trial, to prove a different cause of action. He must state the claim on which he will rely to recover so clearly and concisely that the defendant may be fully advised as to what he is called upon to meet."

In the same case and on the same page the Supreme Court said:

"Every fact essential to entitle the plaintiff to the relief which he seeks must be averred in his bill. Neither unproved allegations nor proof of matters not alleged can be made a basis for equitable relief. If there is nothing in the testimony to sustain the bill *as filed* (1), it must be dismissed: Spangler Brewing Co. v. McHenry, 242 Pa. 522, 89 A. 665; Bowman v. Gum, Inc., 321 Pa. 516, 184 A. 258."

In Abercrombie et ux. v. Bailey et al., 326 Pa. 65, the court below had refused an amendment to the bill. Commenting upon this refusal the Supreme Court said (p. 68):

"Since the amendment contradicted the position taken at the trial in that it introduced a new matter upon which plaintiffs claimed also to have relied, the chancellor properly refused it."

We conclude that plaintiff, having recognized and acknowledged her inability to prevail under the pleadings as they now stand, cannot switch to a completely new theory.

But even though our conclusion in this respect be regarded as fallacious, we are nevertheless of the opinion that the facts would not support plaintiff's new approach.

It will be observed at the outset that the origin of the license was established by plaintiff's own witnesses.

In consequence, the only things in controversy are whether the license was an irrevocable one, or, if irrevocable as to the original licensee, whether it was assignable.

This license, as indicated above, was quite obviously a limited one. If the original licensor had intended the use to be perpetual he would undoubtedly have acceded to the licensees' request to sell the land. Nor could the licensee reasonably have derived a different interpretation from the negotiations. Both parties must have understood that the use was at the will of the licensor.

It is true, as set forth in the A. L. I. Restatement of the Law of Property §519 (4), that a licensee "who has made expenditures of capital or labor in the exercise of his license in reasonable reliance upon representations by the licensor as to the duration of the license, is privileged to continue the use permitted by the license to the extent reasonably necessary to realize upon his expenditures". However, this principle does not work an estoppel under the facts before us. Under this testimony the use of the driveway, as such, did not in any way inure to the benefit of the licensor. It was solely for the use and benefit of the licensee. Therefore, when Kessler refused to sell, it was quite apparent that there were no representations made by him as to the duration of the license; nor could his silence be considered an agreement to permit the use indefinitely. In comment e to subsection (4) of the above paragraph in the restatement we find this appropriate language:

"It (the above quoted paragraph of Section 519) has, of course, no application where the licensee was in no way misled as to the possible duration of the license. If the licensee knows that his license is at the will of the licensor he cannot raise an estoppel by acting upon his own guess as to the probable duration of the license."

Upon the circumstances that prevailed here, Mattis undoubtedly suffered no delusions as to the quality of his user nor its term. As further evidence of that fact, an examination of the muniments offered in this case reveals no reference whatsoever to the use.

Some consideration should also be given to the qualification made by the restatement that the privilege of continuing the use will be restricted to the extent reasonably necessary to enable the licensee to realize upon the expenditures he made. In this case the use continued for upward of 27 years. The original cost of the garage was $175. The cost of paving that portion of the passageway which lies on defendants' property was not disclosed, but, as shown by the certificate of survey offered in evidence, the strip is less than three feet wide and something less than 80 feet long. The cost must therefore have been negligible. Most certainly the licensee, had he lived so long, would have realized upon his expenditures before the passage of 27 years. The restatement is merely reiterative of the common-sense rule that a licensee who makes expenditures under circumstances such as these does so at his peril. 33 Am. Jur. §104, p. 409 puts it this way:

"Nor can it be claimed that the license becomes irrevocable where the licensee's expenditures were trifling, and for aught that appears have been more than repaid in the use already had by the licensee of the privilege given to him."

Of course, where the expenditures are extensive the rule is different. See Pierce v. Cleland et al., 133 Pa. 189; Leininger v. Goodman, 277 Pa. 75.

As pointed out by the chancellor in his adjudication, where a plaintiff proves open, notorious, uninterrupted and adverse user for 21 years or more, the burden then falls upon defendant to explain the origin of the use or to show facts destroying the presumption of an unqualified grant: Wedge et ux. et al. v. Schrock et ux.,

146 Pa. Superior Ct. 425. However, where plaintiff relies upon an oral license to maintain a use, the burden is upon him to prove the essential elements of the license and to show that it possessed qualities which made it irrevocable. In Reagan v. Curran, 226 Pa. 265, 269, the Supreme Court said:

"The right set up by the defendants was an irrevocable license to occupy the land of the testator for an indefinite period. The testimony to establish such a right should be of the same character as that required to take a parol sale or gift followed by possession and improvement out of the operation of the statute of frauds."

Such evidence, it was said in Sneiderman v. Kahn et ux., 350 Pa. 496, 500, must be "clear, precise and convincing". In Baldwin v. Taylor et al., 166 Pa. 507, 516, a case somewhat similar on the facts, we find:

"Now as the equity here sought to be enforced is in derogation of the statute of frauds, the parol proof must be full, complete, satisfactory and indubitable in order to satisfy the chancellor. For a chancellor to doubt is to deny."

Needless to say, the testimony in this case is neither clear, precise nor convincing that the license was irrevocable.

We are likewise convinced that the indulgence by Kessler to Mattis was purely a personal one between brothers-in-law and was not assignable. Section 517 of the restatement bluntly states: "A license is assignable in so far as it was intended in its creation to be assignable." The rationale to this section states, inter alia:

"Privileges of use constituting licenses often arise out of relations that are highly personal. Where they do so arise they are commonly intended to constitute privileges personal to the licensee alone. In such cases it would be inconsistent with the reasonable expecta-

tions of the parties to its creation to hold the license to be assignable."

This is in accord with the Pennsylvania view. In Miller et al. v. Lutheran Conference and Camp Assn., 331 Pa. 241, 250, it is said:

"There does not seem to be any reason why the law should prohibit the assignment of an easement in gross if the parties to its creation evidence their intention to make it assignable . . . Moreover, as a practical matter, there is an obvious difference in this respect between easements for personal enjoyment and those designed for commercial exploitation; while there may be little justification for permitting assignments in the former case, there is every reason for upholding them in the latter."

In Dark et al. v. Johnston et al., 55 Pa. 164, 171, this was said:

"A man may well accord a privilege upon his lands to one person, which he would refuse to all others. Hence it is held that personal license is not assignable, and that an assignment by a licensee determines his right. Though a licenser may be estopped from recalling the privilege granted, the licensee may destroy it. He may abandon or release. He cannot substitute another to his right."

It is interesting to observe in that case that the licensee had entered upon the land and had made extensive expenditures. The Supreme Court held that even though such expenditures made the personal license irrevocable as to the licensee, the latter revoked it by his assignment.

The doctrine of irrevocable license was designed to prevent a licenser from denying the licensee the fruits of his expenditure: Dark v. Johnston, supra (p. 170). It was never intended to work inequity. As the chancellor said in the adjudication:

"The law ought to smile in benign encouragement upon arrangements of this character. Neighbors, espe-

cially in crowded cities where people live in close proximity, should be permitted, without danger, to be charitable one to the other. Civilization is built upon comity and in our daily life the golden rule has become more than a copybook maxim."

To sustain plaintiff in this action would be to work an injustice upon defendants by depriving them of their land, and to constrain neighbors to deal at arm's length with each other.

We are of the opinion that plaintiff may not prevail upon either of the two theories which she has advanced.

And now, to wit, June 3, 1947, all exceptions are dismissed and the bill is dismissed at the cost of plaintiff.