## Cherry v. Harrison

*Paul M. Petro,* for plaintiffs.

*Richard G. Zeleznik* and *Ines W. Cordisco,* for defendants.

McLEAN, J., July 15, 1971.—The principal issues in this equity suit between adjoining landowners are whether plaintiffs had acquired a license to use a portion of the property owned by defendants for a water service line, and whether the court should enjoin defendants Harrison from interfering with the laying of a water service line by plaintiffs in a right-of-way granted by deed over property of defendants Harrison. There are also issues as to whether plaintiffs should be awarded compensatory and punitive damages.

Almost all of the facts of the case are undisputed. A trial was held on July 13, 1971, and, as authorized by Pennsylvania Rule of Civil Procedure 1517, the court finds the facts of the case to be as hereinafter set forth in narrative form.

The parties own adjoining parcels of real estate located in Forward Township, Allegheny County. Defendants Harrison acquired a large tract of land in 1955, and by deed dated December 1, 1961, of record in the Recorder's Office of Allegheny County, in Deed Book Vol. 3962, page 13, conveyed to plaintiffs a portion of said tract, the portion conveyed being one-half acre in area. The portion conveyed to plaintiffs had a home erected on it into which plaintiffs moved about two months prior to the date of the deed, plaintiffs paying defendants two months' rent, until the December 1, 1961, closing of the sale. Defendants, then and now, reside on the premises purchased in 1955, and are thus next-door neighbors to plaintiffs.

When plaintiffs took up residence in the subject property, their water supply came from a cistern on the property, there being no public water distribution system available at the time. Plaintiffs' property fronts on State Highway 905, but the lot sits well above the highway, there being about a 50-foot drop to the highway from plaintiffs' boundary line abutting the highway. This topography necessitates plaintiffs gaining access to their property by passing over and through the property retained by defendants, and from the time of plaintiffs' moving into the property in 1961, plaintiffs have had ingress and egress to their property by passage over a well-defined driveway on the land retained by defendants. There is no issue in this case concerning the rights of plaintiffs to continue to have ingress and egress in this fashion.

The deed from defendants to plaintiffs included an express provision which provides as follows:

"ALSO granting and conveying to the Grantees herein, their heirs and assigns, a right of way 15 feet in width from the cement block building erected upon the above described premises to State Highway Route 905 as is more particularly shown on the survey made

by Alexander L. McVicker on August 2, 1955 and described as follows:

"BEGINNING at a point near the center of the cistern located near the cement block dwelling aforesaid; thence South 30° 00′ West, 175 feet; thence South 79° 49′ West, 150 feet to a point on the easterly line of the State Highway Route 905, the above two courses and distances being the center line of the 15 foot right of way.

"IT IS EXPRESSLY AGREED AND UNDERSTOOD however, that the owners of the land over which this easement is granted shall have the right to use the said right of way together with the grantees, their heirs and assigns."

The parties apparently lived in harmony for several years. Several years after plaintiffs moved in, defendant municipal authority extended its water distribution system into the area in which plaintiffs and the Harrisons lived, and offered its water to said parties. The authority's water main was laid along Route 905 to the driveway serving the Harrison residence. The Harrisons availed themselves of the authority's water, but at that time plaintiffs declined, since the cistern and its system were providing an adequate water supply to plaintiffs. However, in about 1965 the cistern developed a leak, with the result that plaintiffs had to purchase and carry water. Therefore, they determined that it would be desirable to tap into the authority's water distribution system.

In early March or so of 1966, plaintiffs visited defendants Harrison in the Harrison home and discussed with the Harrisons the matter of plaintiffs laying a water service line through the deeded right-of-way so that plaintiffs might tap into the authority's water main along Route 905. The Harrisons suggested that plaintiffs lay the service line, not in the deeded

right-of-way, but rather in a shorter route, a straight line diagonally across a portion of the Harrison property. This was proposed by the Harrisons on the basis that it would be less expensive for plaintiffs, since the line would be shorter, and there would be an advantage to the Harrisons in that it would avoid a possible disruption of sewer lines and septic systems that the Harrisons had previously installed. It was further agreed at this meeting that Mr. Harrison would show plaintiffs just where the water service line should be laid.

Shortly later, on March 11, 1966, plaintiffs paid $200 to defendant authority as a tap-in fee. Following that payment, defendant, Mr. Harrison, showed the husband-plaintiff and one Repasky the specific location in which the service line should be placed, and the work began. Repasky, using appropriate equipment, dug a ditch in the location specified by Mr. Harrison, and the husband-plaintiff and his brother assisted in the physical work of laying the water service line. Plaintiffs paid Repasky $60 for his services, and in addition spent $242.71 for materials in laying the line. Plaintiffs further expended the work and time of the husband-plaintiff and his brother in making the installation.

During almost all of the work of installation, Mr. Harrison was away from home on vacation, but Mrs. Harrison remained in residence at home and without objection observed the installation as it progressed over several days.

For approximately four years, plaintiffs enjoyed the use of the water service line without any objection, or even comment, from the Harrisons. Then in 1970, the Harrisons determined that they wished to use for the installation of one or more mobile homes that portion of their property through which plaintiffs' water

line had been laid. Accordingly, they retained an attorney to notify plaintiffs to remove the water line. This notice was by letter of an attorney dated May 2, 1970.

Plaintiffs offered to relocate the water line into the deeded right-of-way, but defendants refused to permit that. Subsequently, plaintiffs received a copy of a letter dated June 29, 1970, from the solicitor of defendant authority to the authority engineer advising that the Harrisons disputed the right of plaintiffs to continue the presence of their water service line across the Harrison property and advising that Mr. Harrison planned to tear out the line. Then, on July 14, 1970, Mr. Harrison appeared at the regular monthly meeting of the water authority to advise the authority of his immediate intention to break plaintiffs' water service line on his property. Mr. Harrison agreed, however, to give the authority 24 hours so that it might have an opportunity to shut off plaintiffs' water at the main, to protect against the loss of water to the authority and other customers being served by the authority. To protect the water supply and service to other customers, the authority directed its employe to turn off the plaintiffs' water at the main, which turn-off was accomplished on July 15, 1970.

Plaintiffs immediately protested the shut off of their water, contacting the attorney whom they had retained upon receipt of the May 2d letter, contacting the authority and various other public officials, all without success. Subsequently, on advice of the authority's solicitor, the authority's employe returned on July 23, 1970, to turn the water service back on for plaintiffs, but, by that time, defendants Harrison had dug a large hole with a bulldozer and had broken plaintiffs' waterline. Accordingly, the water service was not restored to plaintiffs.

Plaintiffs have still not had water service restored to their property, and in the interim have been physically carrying water to their home. They carry in approximately 23 gallons of water per day for their immediate needs. Prior to the loss of water service, their average water consumption was 177 gallons per day. Plaintiffs go to the homes of various relatives for the purpose of bathing, washing clothes, and other such personal functions.

Plaintiffs filed this suit in equity on March 12, 1971, asking the court to enjoin defendants from interfering with their use of the deeded right-of-way and their right to install a water line therein, to award both compensatory and punitive damages against defendants, and to grant such other relief as may appear proper to the court.

It has long been the law of Pennsylvania that the owner of real estate may orally confer upon another a license to do a particular act or series of acts upon the real estate of the licensor, without conferring upon the licensee an interest in the subject real estate: P. L. E. Licenses, section 25; Big Mountain Improvement Company's Appeal, 54 Pa. 361 (1867); Thompson v. McElarney, 82 Pa. 174 (1876); Whiting v. Sotlar, 23 Law L. J. 169 39 D. & C. 2d 742 (1966); Keefer v. Keefer, 11 Adams L. J. 43 (1969). An apt discussion of this principle appears in Roseman v. Milner, 73 York L. R. 41 (1958), wherein it is said at page 42:

" 'The doctrine of irrevocable license is recognized in Pennsylvania, though not in many other states': Shanahan v. Consolidated Ice Co., 66 P. L. J.: 662 (1918). '. . . The courts of this state have gone beyond the common law, and beyond the rulings of the courts of equity elsewhere': Huff v. McCauley, 53 Pa. 206, 209 (1866). In LeFevre v. LeFevre, 4 S. & R. 241 (1818); Rerick v. Kern, 14 S. & R. 267 (1826), and

later cases, the rule is recognized that if a license or privilege, 'indefinite as to time': Bishop v. Buckley, 33 Pa. Super. 123, 125 (1907), 'to do something on the land of the licensor, is given by parol, then followed by the expenditure of money, on the faith of the parol agreement, it is irrevocable and is to be treated as a binding contract. Equity treats the license thus executed as a contract giving absolute rights and protects the licensee in the enjoyment of those rights': Cole v. Ellwood Power Co., 216 Pa. 283, 289 (1907). These decisions 'rest upon the principle of estoppel.' The parties cannot be placed in status quo after the license has been executed, and work done, or money expended on the faith of it, and hence such a case is regarded as presenting a sufficient reason for a chancellor's interference to restrain any action of the licensor which would deprive the licensee of the benefit of the expenditure he was encouraged to make by the very party who seeks to make it fruitless. Equity treats license thus executed as a contract giving absolute rights, and protects the licensee in the enjoyment of them. . . But where there has not been expenditure *on the faith of a license,* . . . there is no foundation for an estoppel: Huff v. McCauley, supra, p. 208" (Italics supplied.)

Of course, one who claims a right in the land of another arising orally, rather than by legal instrument, properly has a burden of proof that is heavier than normal, and, in this case, the court has charged plaintiffs with a burden of proof by evidence that is clear, strong and convincing: Whiting v. Sotlar, supra. Plaintiffs have met that burden of proof.

With respect, however, to the length of time during which an oral license shall continue, the law requires that the circumstances of the case be considered. Dark et al. v. Johnston et al., 55 Pa. 164 (1867). It has been

held that a license is terminated by the completion of the purpose for which it was granted: Hepburn v. McDowell et al., 17 S. & R. 383 (1828). It is also usually held that a license is a personal privilege, personal to the licensee. With respect to this point, it is said in Dark v. Johnston, supra at page 171:

". . . That a license is a personal privilege, and not assignable, is a well-settled principle. It is induced almost always by confidence in the character of the licensee. A man may well accord a privilege upon his lands to one person, which he would refuse to all others. Hence it is held that a personal license is not assignable, and that an assignment by a licensee determines his right. Though a licenser may be estopped from recalling the privilege granted, the licensee may destroy it. He may abandon or release. he cannot substitute another to his right. . ."

In Kosin v. Andersen et ux., 63 D. & C. 661 (1947), Judge Laub points out that the doctrine of irrevocable license was designed to prevent a licensor from denying the licensee the fruits of his expenditure. Citing Dark v. Johnston, supra, Judge Laub makes the further pertinent observations there, at pages 668 and 669:

" 'The law ought to smile in benign encouragement upon arrangements of this character. Neighbors, especially in crowded cities where people live in close proximity, should be permitted, without danger, to be charitable one to the other. Civilization is built upon comity and in our daily life the golden rule has become more than a copybook maxim.' "

Where one has willfully interfered with another's use and enjoyment of an interest in land, it is appropriate for the court, upon suitable proof, to award damages for the interference. See Moyerman v. Glanzberg, 391 Pa. 387 (1958); Borens v. Krywoshyja et ux., 199

Pa. Superior Ct. 250 (1962); and Eble v. Jones, 158 Pa. Superior Ct. 270 (1945).

With respect to punitive or exemplary damages, the controlling principles are aptly stated in Chambers v. Montgomery, 411 Pa. 339 (1963), where it is said, at page 344:

"Appellant's final contention is that there was no evidence sustaining the award of punitive damages. ' "Punitive damages" are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct.' Restatement, Torts, §908(1). Comment b to the above section states that 'punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.' In Hughes v. Babcock, 349 Pa. 475, 27 A.2d 551 (1944), we said that exemplary damages must be based on ' "malicious", "wanton", "reckless", "willful",. or "oppressive" conduct on the part of defendant.' In determining whether punitive damages should be awarded, the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties should be considered. Restatement, Torts, §908, comment e; Hughes v. Babcock, supra.

Applying the facts as found to the principles of law as discussed, the court makes the following conclusions of law:

1. In March 1966, defendants Harrison orally gave to plaintiffs a license for plaintiffs to lay and maintain a water service line from plaintiffs' property across Harrisons' property in a straight line to the water main of defendant authority at or near the intersection of the Harrison driveway with State Route 905.

2. By reason of the expenditure of substantial funds by plaintiffs in reliance on the grant of the li-

cense, the license became irrevocable, so long as the plaintiffs shall continue to exercise the use conferred by the license.

3. The license is personal to plaintiffs and shall terminate upon the cessation of plaintiffs' occupancy of the residence erected on their property, or upon the plaintiffs' construction of another water service line to serve their property, whichever occurs first.

4. The existence of the license does not oust defendants Harrison from the continued reasonable use and enjoyment of all of their real estate, provided, however, that their use shall not conflict with plaintiffs' enjoyment of the said license.

5. The grant of a right-of-way in the deed from defendants to plaintiffs includes the right to lay and maintain therein a water service line.

6. Plaintiffs have suffered actual damages by reason of the actions of defendants Harrison in interfering with plaintiffs' enjoyment of the license granted them and in obstructing plaintiffs' right to relocate the water line into the deeded right-of-way.

7. The conduct of defendants Harrison has been willful, malicious and in reckless indifference to plaintiffs' rights, and of such character as to support the award of punitive damages.

8. The actions of defendant authority were reasonable under the circumstances, and it was proper for defendant authority to act for the protection of the public water supply, even though that action meant a discontinuance of water service to the plaintiffs.

An appropriate decree nisi will be entered.

## DECREE NISI

And now, July 15, 1971, following a trial in open court, upon consideration of the testimony taken and

of the documentary evidence submitted, it is ordered, adjudged and decreed as follows:

1. Defendants are enjoined permanently from interfering with or obstructing plaintiffs' use of the right-of-way granted plaintiffs in the deed of record in the Recorder's Office of Allegheny County in Deed Book, Volume 3962, page 13, said use by plaintiffs to include the right to lay and maintain in said right-of-way a water service line.

2. An oral license exists under the terms of which plaintiffs have the right to use and maintain a water service line from approximately the point at which the aforesaid right-of-way terminates on the line dividing the respective properties of plaintiffs and defendants Harrison, in a southwesterly direction through the southwestern portion of the property of defendants Harrison, to a point in the water main of defendant authority at the intersection of the Harrison driveway with State Highway No. 905; this license shall terminate upon the cessation of plaintiffs' occupancy of the dwelling house on their property or upon their construction of a different water service line to serve their said property.

3. Compensatory damages are awarded to plaintiffs in the amount of $2,500 against defendants James E. Harrison and Mary C. Harrison his wife.

4. Punitive damages are awarded to plaintiffs in the amount of $1,000 against defendants James E. Harrison and Mary C. Harrison his wife.

5. The costs of the case are assessed against defendants James E. Harrison and Mary C. Harrison, his wife.

6. The court retains jurisdiction of the case to grant such supplemental relief as may become appropriate.

## OPINION SUR EXCEPTIONS

McLEAN, J., December 23, 1971.—This matter is before the court en banc on exceptions filed by defendants Harrison to the adjudication filed by the trial judge. A number of the exceptions are to the findings of fact by the trial judge, but those findings of facts are all adequately founded in the testimony and were thus within the fact-finding province of the trial judge. Accordingly the exceptions to the findings of fact must be dismissed.

The facts of the case are stated in detail in the adjudication, but may be briefly summarized here as follows. Defendants Harrison in 1961 conveyed to plaintiffs a portion of the tract of land on which the Harrisons lived, with the result that plaintiffs and Harrisons became abutting property owners, and neighbors. The deed from defendants Harrison to plaintiffs, of record in the recorder's office of Allegheny County in Deed Book, Volume 3962, page 13, included the following express provision:

"ALSO granting and conveying to the Grantees herein, their heirs and assigns, a right of way 15 feet in width from the cement block building erected upon the above described premises to State Highway Route 905 as is more particularly shown on the survey made by Alexander L. McVicker on August 2, 1955 and described as follows:

"BEGINNING at a point near the center of the cistern located near the cement block dwelling aforesaid; thence South 30° 00' West, 175 feet; thence South 79° 49' West, 150 feet to a point on the easterly line of the State Highway Route 905, the above two courses and distances being the center line of the 15 foot right of way.

"IT IS EXPRESSLY AGREED AND UNDER-

STOOD however, that the owners of the land over which this easement is granted shall have the right to use the said right of way together with the grantees, their heirs and assigns."

When plaintiffs took up residence in the subject property their water supply came from a cistern on the property, there being no public water distribution system available at the time. Several years later defendant municipal authority extended its water distribution system into the area in which plaintiffs and the Harrisons lived, and offered its water to said parties. The authority's water main was laid along Highway Route 905 to the driveway serving the Harrison residence. The Harrisons availed themselves of the authority's water, but at that time plaintiffs declined, since the cistern and its system were providing an adequate water supply to the plaintiffs. However, in about 1965, the cistern developed a leak, with the result that plaintiffs had to purchase and carry water. Therefore they determined that it would be desirable to tap into the authority's distribution system.

Under the findings of fact of the trial judge, the Harrisons then orally agreed to permit plaintiffs to lay a water service line through the Harrison property in a straight line, to reach the authority's main in the highway. Mr. Harrison specified the precise location on the ground, and both Harrisons permitted plaintiffs to make the installation of the service line through the Harrison property at substantial expense to plaintiffs, both in money and in physical effort and time.

The trial judge concluded that plaintiffs were thus granted an oral license by defendants Harrison, and the adjudication sets forth in detail the pertinent Pennsylvania legal authorities supporting that conclusion. We will not repeat here the discussion of those authorities set forth in the adjudication, but approve

that discussion and dismiss the exceptions of defendants relating thereto.

Subsequently, defendants broke the said water service line and refused to permit plaintiffs to repair it. Plaintiffs were thus deprived, and continue to be deprived, of water service. The trial judge concluded that this disruption of plaintiffs' water service by defendants Harrison was improper and awarded damages therefor, in the compensatory amount of $2,500 and in the punitive sum of $1,000. These awards were justified under the evidence and the pertinent legal authorities set forth in the adjudication, so that the exceptions thereto will be dismissed.

However, we find that in one respect the trial judge fell into error, with the result that we must sustain the exception to that portion of the adjudication and decree nisi which determined that the right-of-way granted plaintiffs in the deed from the Harrisons, set forth verbatim above, included the right to lay and maintain a water service line in said right-of-way. As stated in Mercantile Library Company of Philadelphia v. Fidelity Trust Company, 235 Pa. 5 (1912), at page 15:

". . . In this commonwealth the rule always has been that the owner of land who grants a right of way over it conveys nothing but the right of passage and reserves all incidents of ownership not granted."

And in Edwards v. Julian, 192 Pa. Superior Ct. 121 (1960), at page 125, it is stated:

". . . An owner of land who grants a right of way over it conveys nothing but the right of passage and reserves all incidents of ownership not granted; he may make any use of his land that does not interfere substantially with the created easement. . . .

". . . The right to use the easement is implicitly reserved to the owner of the fee of the servient tene-

ment. The right still existed so long as it was exercised reasonably and did not substantially interfere with the easement": Dyba v. Borowitz, 136 Pa. Superior Ct. 532. To the same effect is Clements v. Sannuti et ux., 356 Pa. 63 (1947).

An expressed grant of an easement must be construed in accordance with the ordinary and natural sense of the words used, and in accordance with the parties' intention. The grant of an easement should be construed in the grantees' favor, and as including whatever is reasonably necessary to its enjoyment, and the use must be restricted to reasonable use under the circumstances: Taylor v. Heffner, 359 Pa. 157 (1948); 12 Pennsylvania Law Encyclopedia, Easements, Section 32.

Applying these principles to the facts of the case as found by the trial judge, we must rule that the easement created here by deed conveyed no more than the right of ingress, egress and regress. That is a necessary conclusion from the words used in the deed as well as the circumstances attending the conveyance. Specifically, there was no evidence to indicate that the parties gave any thought or consideration to the provision of a right-of-way for supply of water. No public water distribution system was in existence in the area at the time and the property conveyed to plaintiffs was adequately served with a water system located entirely within the premises conveyed to the plaintiffs.

An appropriate final decree will be entered.

## FINAL DECREE

And now, December 23, 1971, following oral argument and consideration of the brief filed by defendants

Harrison, for the reasons set forth in the foregoing opinion it is ordered, adjudged and decreed as follows:

1. All exceptions filed by defendants Harrison are dismissed, except the exception to conclusion of law number 5 which reads as follows:

"The grant of a right-of-way in the deed from defendants to plaintiffs includes the right to lay and maintain therein a water service line."

The exception to conclusion of law number 5 is sustained.

2. Defendants are enjoined permanently from interfering with or obstructing plaintiffs' use of the right-of-way granted plaintiffs in the deed of record in the recorder's office of Allegheny County in Deed Book, Volume 3962, page 13.

3. An oral license exists under the terms of which plaintiffs have the right to use and maintain a water service line from approximately the point at which the aforesaid right-of-way terminates on the line dividing the respective properties of plaintiffs and defendants Harrison, in a southwesterly direction through the southwestern portion of the property of defendants Harrison, to a point in the water main of defendant authority at the intersection of the Harrison driveway with State Highway No. 905; this license shall terminate upon the cessation of plaintiffs' occupancy of the dwelling house on their property or upon their construction of a different water service line to serve their said property.

4. Compensatory damages are awarded to plaintiffs in the amount of $2,500 against defendants James E. Harrison and Mary C. Harrison, his wife.

5. Punitive damages are awarded to plaintiffs in the amount of $1,000 against defendants James E. Harrison and Mary C. Harrison, his wife.

6. The costs of the case are assessed against defendants James E. Harrison and Mary C. Harrison, his wife.

7. The court retains jurisdiction of the case to grant such supplemental relief as may become appropriate.