451 A.2d 1026

**Charles ORTH and Martha S. Orth**

v.

**Willard T. WERKHEISER and Evelyn E. Werkheiser, Appellants.**

Superior Court of Pennsylvania.

Argued Jan. 5, 1982.

Filed Oct. 22, 1982.

Daniel George Spengler, Bath, for appellants.

Constantine M. Vasiliadis, Bethlehem, for appellees.

Before SPAETH, CAVANAUGH and MONTEMURO, JJ.

SPAETH, Judge:

This is an appeal from a final decree in equity enjoining appellants from interfering with appellees' use of a ten foot wide dirt lane running from appellees' property across appellants' property to a public road. Appellees claimed, and the chancellor found, that they had acquired an easement by prescription. The chancellor therefore entered a decree *nisi* ordering appellants to restore the lane to its former condition and enjoining them from interfering with appellees' use of the lane for ingress and egress. On appellants' exceptions, the court *en banc* approved the chancellor's findings and made the decree *nisi* final. We affirm.

Appellants own a 100 acre tract in Bushkill Township, Northampton County. Appellant-husband purchased the tract in 1942 and, with his wife, has owned it ever since. Appellees' property is a twelve acre tract next to appellants' property. Appellees' line of title may be summarized as

follows. On April 7, 1951, Brice Freestone sold the 12 acre tract to Frank Noecker. On January 23, 1953, Noecker sold the tract to Ralph Lichtenwalner and Kenneth H. Engler. On April 27, 1956, the tract was sold through a straw party to Kenneth H. and Anita E. Engler and Paul C. and Emma King Seyfried. On August 6, 1966, the Seyfrieds sold their one-half interest to The Second National Bank of Nazareth. On May 23, 1969, the Englers and the Second National sold the tract to appellees.

Appellees' tract is landlocked; the only access to it is the lane over appellants' tract. When Freestone sold the tract to Noecker, in 1951, he purported to convey a right-of-way over appellants' tract. In fact, however, Freestone had no right-of-way and there was no basis for his proposed conveyance of one. When appellant-husband received a map from Freestone showing the purported right-of-way, he realized that he "had not signed any easement" and "felt that it [the map] was just a piece of paper." N.T. 50. He therefore pulled out some stakes that Freestone had set out.

Sometime in 1951 appellant—husband and Noecker met. Appellant-husband told Noecker "that there was a row of trees that had marked off a logging trail and the ruts . . . were grown up with saplings . . . ." N.T. 44. Noecker said that he would cut the saplings, and appellant-husband said that he "would blast out these stumps [with dynamite] . . . and we would both have a continuation of the lane down to his corner . . . ." *Id.* Thus Noecker, with appellant-husband's permission, got access over appellants' tract to his tract.

Ralph Lichtenwalner testified that while he was an owner of the 12 acre tract, from January 1953 to April 1956, he used the lane that Noecker and appellant-husband had cleared "about five times, four or five times." N.T. 16. He never discussed his right to use the lane with appellants, but used it without asking anyone's permission.

Kenneth Engler testified that while he was an owner of the 12 acre tract, from January 1953 to May 1969, he used the lane across appellants' tract "[t]hree, four times a week,"

though "[n]ot at all in the wintertime." N.T. 13. He also testified that he never got appellants' permission to use the lane. N.T. 10–11.

Appellee-husband testified that he used the lane across appellants' tract from May 1969, when he and his wife bought the 12 acre tract, until 1972, without ever talking to appellants. He described this use as "three, four times a week," with some interruptions, for "an average [use] of once a week." N.T. 25. He further testified that sometime in 1972, he and appellant-husband met, and that "[appellant-husband's] first statement was that I didn't own the lane and I stated that I most certainly did," N.T. 26; that there was some discussion about use of the lane by "the logging people," and that appellant-husband "assured me that it [the lane] would be repaired," id.; that the lane was repaired; and that he continued to use it, N.T. 26–27, until May 1978, when appellant-husband blocked the lane with boulders, N.T. 27–28, thereby denying him access to the 12 acre tract, N.T. 29.

The facts as we have just stated them are substantially uncontradicted. Appellant-husband testified that he "never met" Lichtenwalner, N.T. 45, but he did not deny that Lichtenwalner had used the lane. He also testified that "[t]he understanding between [him and Engler] was that he [Engler] had the right to that lane as long as I used the lane," N.T. 45, but later he made plain that by "understanding" he meant his interpretation of the situation and not any agreement. Thus he said that the Englers' and later, appellees,' use of the lane was "with my obvious permission as far as my expression would be," N.T. 49, and when asked whether he had ever given the Englers or appellees permission, he said he had not, N.T. 60–61:

I never said that [gave permission], just as they never said they owned it.

Q. They just continued to go back and forth over the land?

> A. With my permission. They didn't tell me they owned it. Mr. Orth [appellee-husband] is the first man that told me he owned the land.

N.T. 61.

With respect to this testimony, the lower court stated, quite correctly:

> Defendant Willard Werkheiser [appellant-husband] testified that he gave his "obvious permission" to use the lane. This "obvious permission" was Defendant's assumption that the use was permissive during the 21-year period. Having not been communicated to any user, Defendant's "obvious permission" was no permission at all. The Defendant's mere failure to object cannot be deemed the equivalent of his giving permission. *See Tarrity v. Pittston School District,* 16 Commonwealth Ct. 371, 328 A.2d 205 (1974).

Slip op. at 10.

■ On these facts, the first issue we must decide is the effect of appellants having given Frank Noecker permission to use the lane. For a use based on permission cannot ripen into a prescription; the owner of the land used must be given notice that the use is hostile, and the use must thereafter continue for the full prescriptive period. *See Shinn v. Rosenberger,* 347 Pa. 504, 32 A.2d 747 (1943); *Johns v. Johns,* 244 Pa. 48, 90 A. 535 (1914); *See also, Williams v. Fears,* 248 Ark. 486, 452 S.W.2d 642 (1970); *Kiernan v. Kara,* 7 N.J.Super. 600, 72 A.2d 402 (Ch.Div.1950); *Foley v. Lyons,* 85 R.I. 86, 125 A.2d 247 (1956); *Wiegand v. Riojas,* 547 S.W.2d 287 (Tex.Civ.App.1977). Appellants argue that there was no proof that they were given notice that the use of the lane across their tract was hostile; therefore, they say, Noecker's permissive use could never ripen into a prescription. We are not persuaded by this argument, however, for it is based on the premise that the only event that could start the prescriptive period running was an express statement by a successor to Noecker's title that he was making a hostile use of the lane. This premise, in our opinion, is mistaken.

Suppose that A gives B permission to use a lane across A's property, Blackacre. If A revokes the permission, and B nevertheless continues to use the lane across Blackacre, B's use will constitute notice of a hostile claim. *Kiernan v. Kara, supra; Foley v. Lyons, supra.* If A sells Blackacre, the sale will have the effect of revoking the permission that A gave B. *See Puleo v. Bearoff,* 376 Pa. 489, 103 A.2d 759 (1954). *See also Kiernan v. Kara, supra; Foley v. Lyons, supra.* Thus, if appellants had sold their tract, the permission to use the lane across it, given by appellants to Noecker, would have been revoked. If Noecker's successors in title nevertheless continued to use the lane, the use would have been hostile, and if continued for 21 years, would have ripened into a prescriptive easement.

■ Appellants, of course, did not sell their tract; instead, Noecker sold his. In our opinion, however, this difference is immaterial. Noecker could not transfer appellants' permission that he could use the lane across appellants' tract to Frank Lichtenwalner and Kenneth H. Engler, when he sold the 12 acre tract to them, for appellants' permission was personal to Noecker. Noecker's sale of the 12 acre tract therefore had the effect of revoking appellants' permission to use the lane across appellants' tract. If Lichtenwalner and Engler nevertheless continued to use the lane—and they both testified, and appellant did not deny, and the chancellor found, that they did—the use was hostile. The prescriptive period therefore started to run. Since the hostile use continued for over 21 years—from 1953 to 1969 (Lichtenwalner and the Englers), and 1969 to 1978 (appellees)—it ripened into a prescriptive easement.

The case might be different—at least, further analysis would be required—if appellants had not known of Noecker's sale of the tract and of the continued use of the lane by Noecker's successors-in-title. But appellants did know. In these circumstances we see no reason to hold that appellants could preclude prescription—could prevent the prescriptive period from running—by sitting back and silently watching the use continue uninterrupted, and then later assert that the use had proceeded with appellant-husband's "obvious

permission." If appellants wished to preclude prescription, they had to do something, as, for example, notify Noecker's successors-in-title that they were not to use the lane, and then, if the use continued, block the lane or obtain an injunction against its use.

We are aware that in *Margoline v. Holefelder,* 420 Pa. 544, 218 A.2d 227 (1966), it is said, in *dictum,* that "a prior permissive use by a predecessor in title will be deemed to continue until the contrary is shown." *Id.,* 420 Pa. at 547, 218 A.2d at 229. However, we do not understand this statement as inconsistent with our decision. The Court did not have before it the issue before us—whether a permission given a predecessor in title is revoked when that predecessor sells his property; the court did not say what had to be "shown" to prove "the contrary." Moreover, in *Loudenslager v. Mosteller,* 453 Pa. 115, 307 A.2d 286 (1973), the Court upheld the chancellor's finding that even though the initial use had been permissive, a prescriptive easement had been acquired by more than 21 years of open and hostile use. While this decision is not expressly on point, for it did not expressly decide what we decide today—that a prior permission is revoked when the person to whom the permission was given sells his property—it is consistent with our decision.