J-A27010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JEREMY D. WITNER AND RACHEL A. WITNER, HIS WIFE, ROBERT BRIAN SELERT AND MICHELLE A. SELERT, HIS WIFE<br><br>Appellants<br><br>v.<br><br>KYLE G. TITUS AND ALLYSON M. TITUS, HIS WIFE, ROBERT G. PUGH AND DEBORAH PUGH, HIS WIFE, ROBERT JOSEPH PUGH, BRANDON PUGH AND KAREN PUGH, HIS WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 764 EDA 2016 |

Appeal from the Judgment Entered February 8, 2016
In the Court of Common Pleas of Carbon County
Civil Division at No(s): 13-0597

BEFORE:  PANELLA, J., LAZARUS, J., and FITZGERALD, J. [*]

JUDGMENT ORDER BY PANELLA, J.          **FILED JANUARY 31, 2017**

Appellants, Jeremy D. Witner and Rachel A. Witner, his wife, Robert

Brian Selert and Michelle A. Selert, his wife, appeal from the judgment

entered after a non-jury verdict in favor of Appellees, Kyle G. Titus and

Allyson M. Titus, his wife, Robert G. Pugh and Deborah Pugh, his wife,

Robert Joseph Pugh, Brandon Pugh and Karen Pugh, his wife, and against

_____

[*] Former Justice specially assigned to the Superior Court.

Appellants.[1] Appellants challenge the trial court's determination that Appellants failed to establish either a prescriptive easement or an easement by implication over Appellees' property. We affirm.

The trial court accurately summarized the history of this case. *See* Trial Court Opinion, 6/26/15, at 1-8. Therefore, a detailed recitation of the factual and procedural history is unnecessary. We review a verdict following a non-jury trial as follows.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record of if its findings are premised on an error of law. However, where the issue . . . concerns a question of law, our scope of review is plenary.

*Stephan v. Waldron Elec. Heating and Cooling, LLC*, 100 A.3d 660, 664 (Pa. Super. 2014) (citation and brackets omitted). Further, the fact-finder is

---

[1] Appellants purport to appeal from the denial of post-trial motions on February 8, 2016. *See* Notice of Appeal, filed 3/9/16. This is simply incorrect. "Orders denying post-trial motions . . . are not appealable. Rather it is the subsequent judgment that is the appealable order when a trial has occurred." *Harvey v. Rouse Chamberlin, Ltd*., 901 A.2d 523, 525 n.1 (Pa. Super. 2006) (citations omitted). Here, judgment was entered by order on February 8, 2016. Despite this error, this Court will address the appeal because judgment has been entered on the verdict. *See Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division*, 781 A.2d 1263, 1266 n.3 (Pa. Super. 2001). We have corrected the caption accordingly.

free to accept or reject the testimony of both expert and lay witnesses, and to believe all, part or none of the evidence. ***See Terwilliger v. Kitchen***, 781 A.2d 1201, 1210 (Pa. Super. 2001).

On appeal, Appellants raise two issues. The trial court, in its June 26, 2015 opinion, as well as its February 8, 2016 opinion, has thoroughly reviewed the claims on appeal and disposed of all arguments on the merits. We have reviewed the parties' briefs, the relevant law, the certified record, and the well-written opinion of the Honorable Roger N. Nanovic. We have determined that the trial court's opinions, as well as its findings of fact and conclusions of law supporting the March 4, 2015 verdict, comprehensively disposes of Appellants' issues on appeal, with appropriate references to the record and without legal error.[2] Therefore, we will affirm based on those decisions. ***See*** Trial Court Opinion, dated 6/26/15; Trial Court Opinion, dated 2/8/16.

Judgment affirmed.

---

[2] Through their brief, Appellants argue that the trial court erred in finding that the 68-acre tract was acquired by John and Mary Gerhard on March 1, 1940, as both John and Mary Gerhard were deceased as of that date. ***See*** Appellants' Brief, at 20. The trial court concedes that it erred in making this finding, however, the trial court concludes, and we agree, that this error does not in any way impact the trial court's ultimate finding. ***See*** Trial Court Opinion, 2/8/16, at 4 n. 2. It was harmless.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/31/2017</u>

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA

CIVIL DIVISION



JEREMY D. WITNER AND, :
RACHEL A. WITNER, HIS WIFE, :
ROBERT BRIAN SELERT AND, :
MICHELLE A. SELERT, HIS WIFE, :
    Plaintiffs :
           v. : NO. 13-0597
KYLE G. TITUS AND :
ALLYSON M. TITUS, HIS WIFE, :
ROBERT G. PUGH AND :
DEBORAH PUGH, HIS WIFE, :
ROBERT JOSEPH PUGH, :
BRANDON PUGH AND :
KAREN PUGH, HIS WIFE, :
    Defendants :

Cynthia S. Yurchak, Esquire      Counsel for Plaintiffs
Kim Roberti, Esquire          Counsel for Defendants

## MEMORANDUM OPINION

Nanovic, P.J. – June 26, 2016

The ultimate issue in this case is Plaintiffs' right, if any, to use a private road located on the northern edge of Defendants' adjoining properties as a means of ingress to and egress from Plaintiffs' property. Plaintiffs premise their claim to an easement as arising from adverse use, and by implication, necessity, express grant, and estoppel. Each is addressed below.

### PROCEDURAL AND FACTUAL BACKGROUND

All of the parties' properties are located in Packer Township, Carbon County, Pennsylvania, in an area between Wetzel Run Drive on the north and Quakake Road on the south. Both

[FN-28-15]

1



Wetzel Run Drive and Quakake Road run roughly in an east-west direction. Both are public roads which intersect with Pennsylvania State Route 93 to the east.

In 1850, all of the parties' properties were encompassed within a 412 acre tract of property owned by Dennis Bauman. (Plaintiffs Exhibit No.6). By deed dated April 1, 1853, Dennis Bauman conveyed 68 acres of this property to John Steiner. (Plaintiffs Exhibit No.7). All of Defendants' properties are contained within this 68 acre tract. By deed dated August 10, 1855, Mr. Bauman conveyed 40 acres of his property to Charles Brandenberg. All of Plaintiffs' properties are contained within this tract. The 68 and 40 acre tracts are adjacent to one another, with the 68 acre tract lying on the western side of the 40 acre tract.

The relative location of Plaintiffs' and Defendants' properties to one another (not to scale) are depicted on Appendix A of this opinion. Also shown is the location of the disputed right-of-way, now named Meyers Drive,[1] in relation to the parties' properties and Wetzel Run Drive, as well as where

---

[1] What is now known as Meyers Drive was previously part of Pine Tree Lane. In late 2012, early 2013, the Defendants requested the supervisors in Packer Township to rename that portion of Pine Tree Lane crossing the northern end of their properties as Meyers Drive in honor of Joseph Meyers who had once owned their properties, was a relative of many of them, and was a respected citizen in the Township. Before this name change, Defendants' home mailing addresses were for Pine Tree Lane. Even today, Grover Gerhard's home mailing address is 220 Pine Tree Lane. Grover Gerhard's property was part of the 40 acre tract.

Quakake Road and a right-of-way granted by Hattie Gerhard to J. Homer Gerhard in 1941 are located. Finally, Appendix A shows the location of some other properties and features or characteristics of the immediate area referred to in the text of this opinion.

We do not know when farming began in the area, but clearly by 1940 most, if not all, of the 68 and 40 acre tracts were being farmed, as well as many of the surrounding properties. In 1941, John Homer Gerhard ("Homer") owned and was farming the 68 acre tract, and Hattie Gerhard ("Hattie") owned and was farming the 40 acre tract. Hattie's husband, Samuel O. Gerhard, who had acquired the 40 acre tract in 1913, died on March 2, 1938. On February 28, 1941, Hattie granted Homer a 15 foot wide right-of-way along the western edge of her property, 850 feet in length, beginning on Quakake Road and running north to the southern end of Homer's property. (Plaintiffs Exhibit No.26).

At the time of this conveyance, two farming roads existed on either side of Hattie's property – one along the entire length of the boundary between the 68 acre and 40 acre tracts, and the other along the entire length of the boundary between the 40 acre tract and the adjacent property to the east, also farmed. Meyers Drive, which runs in a west/east direction from Wetzel Run Drive, intersected with the north/south road on the western side of Hattie's property at its northern terminus and

[FN-28-15]

3

connected at this intersection with another dirt road (now known as Pine Tree Lane) which ran across the northern end of Hattie's property, also in a west/east direction. At the easternmost end of this other road, it intersected with the north/south road running along the eastern side of Hattie's property. All of these roads existed at least as early as February 28, 1941.

These roads were all dirt paths running along the edge of farmers' fields. They were wide enough to accommodate farming equipment and motor vehicles - approximately ten feet in width - and for the most part, they were unimproved, some consisting of only two tire tracks. Some were better defined and more permanent than others, remaining in the same location year after year due to the frequency with which they were used and their destination. This included Meyers Drive which provided direct access to Wetzel Run Drive, a public road. Others, such as the road on the northern end of Hattie's property, were plowed under yearly to take full advantage of the length of the field for planting.

These roads were used by the owners of the 68 and 40 acre tracts, who farmed these and surrounding fields, and their families - including Hattie, her husband, and her children - for farming and for traveling between properties and gaining access to surrounding public roads, such as Wetzel Run Drive and Quakake Road. Meyers Drive for instance was used by Hattie, her

[FN-28-15]
4

husband, and her children, not only as a means of access to Wetzel Run Drive while moving farming equipment between fields, but also for visiting family and friends, for moving construction equipment and materials, and for miscellaneous reasons. On occasion, Samuel O. Gerhard used this road to gather peonies. The roads were shortcuts between public roads.

The use of Meyers Drive in particular by Hattie and the owners of her property over the years, including Robert Selert at the present time, has been far in excess of twenty-one years, and it has been continuous, open, visible, and uninterrupted since the late 1930s. What is unclear and unproven is when it started and how. At the outset, was it permissive, or hostile and adverse? And when did it first become open and continuous? In all likelihood, the antiquity of the beginning use of Meyers Drive makes this unknowable.

Important also is knowing who the users of these roads were and their relationship with one another. Samuel O. Gerhard and Homer's father, Charles Gerhard, were brothers. Samuel was Homer's uncle. Homer owned the 68 acre tract between November 10, 1941, and August 19, 1961. At that time the property was conveyed to his daughter, Mary E. Meyers, and her husband, Joseph Meyers. When the four lots located on the northern edge of the 68 acre tract were conveyed to the Defendants, Kyle and Allyson Titus, Robert and Deborah Pugh, Robert Joseph Pugh, and

[FN-28-15]
5

Brandon and Karen Pugh, in each instance a twenty-foot-wide earthen pathway along the northern edge of the property conveyed was reserved by the grantor as a means of access to remaining lands of the 68 acre tract situate on the east. Joseph Meyers died on April 26, 2002. After his death, the balance of the 68 acre tract was conveyed by Mary Meyers to her daughter, Deborah Pugh, and her son-in-law, Robert G. Pugh, on November 7, 2002. Defendants Robert Joseph Pugh and Brandon Pugh are Defendants Robert G. and Deborah Pugh's children.

As to the 40 acre tract, title to this property was transferred by Hattie to her son, Raymond S. Gerhard, and his wife, Verna E. Gerhard, by deed dated September 23, 1953. Eugene Gerhard, who at different times purchased various properties from Homer for farming, is Raymond's brother. The three lots at the northern end of the 40 acre tract were transferred by Raymond and Verna Gerhard to their three children, Grover Gerhard, Donald Gerhard and Mildred Selert, and their respective spouses, in 1975 and 1976. In each case, the deeds of conveyance reserved and excepted to the grantor a twenty foot right-of-way across the northern end of the properties conveyed. In addition, the deed to Grover Gerhard excepted and reserved a 20 foot right-of-way along the western side of the property conveyed. The deed to Mildred Selert also excepted and reserved a twenty foot right-of-way along the

eastern side of the property, which is depicted on a map attached to the deed as connecting with an existing earth road located along the eastern edge of the 40 acre tract.

On August 8, 1977, Raymond Gerhard conveyed a 1.3 acre lot to Nancy C. Hinkle; this lot is to the immediate south of the properties previously conveyed to Donald Gerhard and Mildred Selert and their spouses.[2] This lot is now owned by Robert Selert. By deed dated January 19, 1978, Raymond and Verna Gerhard conveyed the balance of the 40 acre tract to Arnold and Mildred Selert, who in turn conveyed this property to their son, Robert Selert, one of the Plaintiffs, on January 19, 1978. Appendix B to this opinion charts the family relationship between the former and current owners of the 68 and 46 acre tracts.

Rachel A. Witner, another Plaintiff, is Robert Selert's daughter. The property now owned by Rachel A. Witner and her husband, Jeremy D. Witner, previously consisted of two separate lots: the western half of this property is the same lot which Raymond and Verna Gerhard originally conveyed to Donald and Patricia Gerhard, and the eastern half is the same property which Raymond and Verna Gerhard originally conveyed to Arnold and Mildred Selert. Arnold and Mildred Selert conveyed this

---

[2] The deed for this conveyance was not placed in evidence, and we do not know what, if any, rights-of-way were granted or reserved for access to this property.

property to their son, Edward J. Selert, and his wife, Rebecca A. Selert, on June 25, 1990. Edward and Rebecca Selert built a home on this property in 1989, which burned down in 1996, and was not rebuilt. While residing in this home, Edward and Rebecca Selert used Meyers Drive to gain access back and forth to their home. The Witners became the owners of the western half of their property on January 29, 2010, and of the eastern half on March 8, 2011.

In October 2009, Defendants erected a gate on Meyers Drive near its intersection with Wetzel Run Drive. Almost two years later, on June 21, 2011, the Witners commenced this suit by filing a claim for access to their property pursuant to the Private Road Act, 36 P.S. §§ 2731-2891, in the Carbon County Clerk of Courts office.[3] This action was subsequently amended to include additional counts and to join Rachel Witner's parents, Robert B. Selert and Michelle A. Selert, as claimants. On the basis of In re Opening Private Road for Benefit of O'Reilly, 22 A.3d 291 (Pa.Cmwlth. 2011), Plaintiffs' claim under the Private Road Act was stricken and the case was then transferred to the law side of the court and assigned the present docket number.

A bench trial was held before the court on August 28, 2014, October 6, 2014, December 3, 2014, and December 4, 2014.

---

[3] This suit was commenced less than two weeks before Defendants had Robert B. Selert, Michelle A. Selert, and Rachel A. Witner arrested for trespassing on Meyers Drive on July 4, 2011. (Plaintiffs Exhibit Nos. 42-44). These charges were dismissed by the magistrate.

## DISCUSSION

### Prescriptive Easement

A prescriptive easement is created by adverse, open, notorious, continuous, and uninterrupted use of land for a period of twenty-one years. Newell Rod and Gun Club, Inc., v. Bauer, 597 A.2d 667, 669-70 (Pa.Super. 1991) (noting that the chief distinction between the doctrines of "adverse possession" and "prescription" is that "in adverse possession the claimant occupies or 'possesses' the land of the fee owner, whereas in prescription the claimant makes some easement-like use of it").

The use is open and notorious if it is sufficiently visible and manifest to place a landowner exercising reasonable vigilance on notice of the claimed usage. Boyd v. Teeple, 331 A.2d 433, 434 (Pa. 1975) (continuous use of a roadway over a servient estate establishes open and notorious use); see also Watkins v. Watkins, 775 A.2d 841, 846 (Pa.Super. 2001). Continuous use is use which evidences "a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right." Keefer v. Jones, 359 A.2d 735, 737 (Pa. 1976). A use is "uninterrupted" if "those against whom the use is adverse do not initiate and bring to successful conclusion legal proceedings or otherwise cause a cessation of the use." RKO-Stanley Warner Theaters, Inc. v. Mellon Nat'l Bank & Trust Co., 436 F.2d 1297,

1301 n.14 (3d Cir. 1970). Here, the Plaintiffs have met their burden of proof as to these three elements beginning in the late 1930s with Hattie and Samuel O. Gerhard's use of the 40 acre tract and Meyers Drive to access Wetzel Run Drive.

Prescriptive rights must be established by a user with hostile intent, and not through indulgence, permission or mutual accommodation. The word "hostile" as an element of adverse use does not mean "ill will" or "hostility," but implies an assertion of rights adverse to that of the true owner. *Cf.* Watkins, 775 A.2d at 846 (discussing elements for adverse possession). Where one uses an easement whenever he sees fit, without asking leave, and without objection, it is adverse and an uninterrupted adverse enjoyment for twenty-one years cannot be afterwards disputed. Adshead v. Sprung, 375 A.2d 83, 85 (Pa.Super. 1977). Where a use has been open and continuous into the indefinite past such that how, when and why the use began predates living human memory and is incapable of present proof, the use is "presumed to have been in pursuance of an unqualified grant [*i.e.*, a prescriptive easement], and the burden of showing the contrary is upon the party denying the presumption." Wedge v. Schrock, 22 A.2d 305, 309-10 (Pa.Super. 1941); *see also* Predwitch v. Chrobak, 142 A.2d 388, 389 (Pa.Super. 1958). However, where a familial relationship exists, "permissive use will be presumed, thereby negating the element of hostility."

[FN-28-15]
10

Watkins, 775 A.2d at 846. Not only is "[t]he use of the disputed land deemed permissive when a familial relationship exists," the familial relationship need not be with "an *immediate* family member." *Id.* at 847 (emphasis in original). Further, if a use commences permissively, it will be deemed to continue as permissive "in the absence of a clear showing that the user brought home his intention to make an adverse use without recognizing the rights of the owner." Gehres v. Falls Twp., 948 A.2d 249, 252 n.2 (Pa.Cmwlth. 2008) (quoting Wanczycki v. Svoboda, 36 Lehigh L.J. 59, 64 (1974)).

Samuel O. Gerhard, who died on March 2, 1938, acquired the 40 acre tract on May 1, 1913. Upon his death, this property passed to his widow, Hattie Gerhard, who conveyed title to her son, Raymond S. Gerhard, and his wife, Verna E. Gerhard, on September 23, 1953. Raymond and Verna then transferred title to their daughter, Mildred L. Selert, and her husband, Arnold R. Selert, on January 16, 1978.

The 68 acre tract was acquired by Samuel Gerhard's father and mother, John and Mary Gerhard, on March 1, 1940, who later transferred this property to their grandson, John Homer Gerhard ("Homer"), on November 10, 1941. Homer and Raymond were cousins. The property was next conveyed by Homer to his daughter, Mary E. Meyers, and her husband, Joseph Meyers, on August 19, 1961.

As is evident from this recital, during the twenty-one year span from March 1, 1940 to August 19, 1961, the relationship between the owners of the 68 acre and 40 acre tracts varied from that of father- and mother-in-law (John and Mary Gerhard) and daughter-in-law (Hattie Gerhard); to nephew (Homer) and aunt (Hattie); to first cousins (Homer and Raymond Gerhard); to second cousins (Mary Meyers and Mildred Selert). These familial relationships are all close and raise a presumption that the use of Meyers Drive by the owners of the 40 acre tract was permissive. Plaintiffs have presented no evidence to rebut this presumption. Rather, consistent with this presumption, Eugene Gerhard, Samuel Gerhard's son and Raymond Gerhard's brother, testified clearly that Meyers Drive existed during this time period and was used freely by his immediate family. Because of this familial relationship, Plaintiffs' predecessors' use of Meyers Drive was not hostile. *See also* Sterner v. Freed, 570 A.2d 1079, 1082 (Pa.Super. 1990) (where a familial or fiduciary relationship exists, permissive use will be presumed).

The presumption of a permissive use by virtue of the familial relationship between the owners of the 68 and 40 acre tracts continued at least until the erection of the gate by the Defendants in October 2009. At that time, Deborah Pugh and Robert Selert, the principal owners of these two tracts, were third cousins. The erection of this gate is the first time that

[FN-28-15]

12

the owners of the 68 acre tract made clear that the prior permissive use was over.

Nor did the owners of the 40 acre tract at any time prior to this date assert that their use by a predecessor in title of Meyers Drive was other than permissive. Margoline v. Holefelder, 218 A.2d 227, 229 (Pa. 1966) (holding that a prior permissive use by a predecessor in title will be deemed to continue until the contrary is shown); Orth v. Werkheiser, 451 A.2d 1026, 1028 (Pa.Super. 1982) (holding that permissive use by a predecessor in title is personal to that predecessor, is non-assignable, and that adverse use by a successor owner if continued for over twenty-one years will ripen into a prescriptive easement). Though disputed, we accept as true and corroborative of a permissive use that Robert Selert sought permission from both Robert G. Pugh and Kyle G. Titus to allow his daughter, Rachel Witner, to use Meyers Drive as a means of access to her property.[4]

---

[4] A use which is permissive to one property owner becomes adverse for purposes of calculating the prescriptive period when continued hostilely by the purchasers of that property. Orth v. Werkheiser, 451 A.2d 1026, 1029 (Pa.Super. 1982). Consequently, in relation to the Witner property which was severed from the 40 acre tract in 1975 and 1976, adverse use of Meyers Drive by the new owners for a period in excess of twenty-one years will support a prescriptive easement. However, in this regard, the evidence is insufficient. No evidence was presented as to what use Donald Gerhard made of Meyers Drive following the conveyance to him of the western half of what is now the Witner property in 1975 by Raymond and Verna Gerhard. With respect the eastern half of the Witner property, even if it were established that Edward and Rebecca Selert's use of Meyers Lane between 1989 and 1996 when their home burned down was adverse, this usage is far short of the twenty-one years required to obtain a prescriptive easement.

[FN-28-15]

## Easement by Implication

To establish an easement by implication, the following three factors must be proven: (1) first, a separation of title; (2) that, before the separation takes place, the use which gives rise to the easement, shall have been so long continued, and so obvious or manifest, as to show that it was meant to be permanent; and (3) that the easement must be reasonably necessary to the beneficial enjoyment of the land granted or retained. Bucciarelli v. Delisa, 691 A.2d 446, 449 (Pa. 1997); Possessky v. Diem, 655 A.2d 1004, 1008 (Pa.Super. 1995). When these factors exist, the grant or reservation of an easement is implied from the conveyance, and the owner of the property subject to the easement is charged with notice of it and knowledge of the facts that could have been acquired by the exercise of reasonable diligence. Anania v. Serenta, 119 A. 554, 556 (Pa. 1923).

The existence of the first factor is not in dispute. The 68 and 40 acre tracts were once held in common ownership: by Dennis Bauman in 1850. However, as to the second factor,

---

Nor are the Witners able to tack any adverse usage claimed by Robert Selert to the benefit of their property. Mr. Selert did not acquire title to his property until 1978, after title to the Witner property was severed from the 40 acre tract. Therefore, even if Robert Selert was able to establish that his use of Meyers Drive after 1978 was adverse and continuous for a period of twenty-one years or more, such right, at best, would attach to the property owned by him and for whose benefit the prescriptive easement would be appurtenant. See Lindenmuth v. Safe Harbor Water Power Corp., 163 A. 159, 161 (Pa. 1932) (an appurtenant easement is attached to a specific property and may not be separated from it; it is not independently alienable).
[FN-28-15]

Plaintiffs have failed to clearly prove that Meyers Drive existed when ownership of the 68 and 40 acre tracts was severed. The burden of proving the existence of Meyers Drive at this time was upon Plaintiffs. Stein v. Bell Telephone Co., 151 A. 690, 692 (Pa. 1930).

The 68 acre tract was conveyed by Dennis Bauman in 1853, and the 40 acre tract in 1855. At that time, it is unclear whether the right-of-way for the public road between Weatherly and Tamaqua, which at some point crossed through the 68 acre tract and would have provided a clear means of access to this property from a public road, then existed. See Plaintiffs Exhibit Nos.20 (Mary Ulshafer Tract - Parcel #2) and 38 (1885 Beers Atlas). More importantly, what is clear is that the 1855 deed for the 40 acre tract has as its southern boundary the public road leading from the L&S Turnpike to Tamaqua, now known as Quakake Road, thus establishing open access to this property. (Plaintiffs Exhibit Nos. 10 and 38).

Neither deed from Dennis Bauman references Meyers Drive. In fact, the furthest back Plaintiffs' evidence goes to show the existence of Meyers Drive is either 1937 or 1938, near the time of Samuel Gerhard's death. Eugene Gerhard, who testified he was nine years old when his father died, provided this testimony. However, at this time, Meyers Drive was at best a narrow dirt farmer's path running along the edge of a field. Further, 1937

is eighty-four years after title to the 68 and 40 acre tracts was severed. This evidence does not prove that at the time title was severed, the critical point of our analysis, there existed an open, visible, continuous and permanent use of Meyers Drive, or that such use was necessary to the beneficial enjoyment of the 40 acre tract. To the contrary, no evidence or testimony was presented as to how the 68 and 40 acre tracts were used in relation to one another – or even what use was made of these properties - by Dennis Bauman before the 1853 conveyance to John Steiner. Moreover, Plaintiffs' contention that Meyers Drive proceeded in an easterly direction to intersect with what is now State Route 93 is not supported by the credible evidence. *See* Plaintiffs Exhibit No.38 (1885 Beers Atlas) which, while depicting Wetzel Run Drive, contains no reference to Meyers Drive or any other public road at this location extending to State Route 93.

## Easement by Necessity

An easement by necessity may be implied upon the division of property if: (1) title to the properties has been held by one person, (2) this unity of title has been severed by the conveyance of one of the tracts, and (3) the easement in question is necessary for the use of the severed tract. Graff v. Scanlan, 673 A.2d 1028, 1032 (Pa.Cmwlth. 1996). "It is a well-settled principle of law that, in the event property is

[FN-28-15]

conveyed and is so situated that access to it from the highway cannot be had except by passing over the remaining land of the grantor, then the grantee is entitled to a way of necessity over the lands of the grantor." Possessky, 655 A.2d at 1010 (citation and quotation marks omitted). Further, the measure of necessity is that of actual necessity, not mere convenience. Graff, 673 A.2d at 1032. As with an easement by implication, Defendants do not dispute that the first two prongs of this test have been met.

As previously stated, at the time Dennis Bauman conveyed the 68 acre tract in 1853, he retained ownership of the 40 acre tract. However, because the legal description of this 40 acre tract bounds on a public road, it is clear this property is not landlocked. *See* Phillippi v. Knotter, 748 A.2d 757, 760-61 (Pa.Super. 2000) (determining that plaintiff failed to establish the existence of an easement by necessity over an adjoining parcel because a portion of plaintiff's property was accessible from a public road), *appeal denied*, 760 A.2d 855 (Pa. 2000).

Nor was the northeast corner of the 40 acre tract, what is now the Witners' property, landlocked by this conveyance. The doctrine of an easement by necessity is not meant to "ensure that each portion of [a] singular property has access to a public road," rather only that the property has some access. Phillippi, 748 A.2d at 761. "The right of way from necessity

[FN-28-15]
17

over the land of another. . . is always of strict necessity, and the necessity must not be created by the party claiming the right-of-way. It never exists when a man can get to his own property through his own land." Ogdon v. Grove, 38 Pa. 487 (1861) (quoting M'Donald v. Lindall, 3 Rawle 492, 493 (1827)).

Plaintiffs nevertheless argue that due to distance, slope and wet areas, access to the Witners' property along the eastern boundary of Robert Selert's property from Quakake Road is extremely difficult and burdensome, such that use of Meyers Drive is not simply a matter of convenience, but a question of actual necessity within the meaning of this term. *See* Application of Little, 119 A.2d 587, 589 (Pa.Super. 1956). This notwithstanding, to the extent a necessity exists to justify the grant of an implied easement to the Witners' property, it was not created when title to the 68 and 40 acre tracts was severed in 1850, but by the conveyances in 1975 and 1976 of what is now the Witners' property to Donald Gerhard and Mildred Selert, respectively. These conveyances by Raymond and Verna Gerhard to their children severed these two properties from the 40 acre tract. To the extent the conveyances in 1975 and 1976 meet the criteria for granting an easement by necessity, the Witners' recourse is against the owner of the 40 acre tract from which their property was severed, not against the owners of adjacent land who were strangers to the severance.

[FN-28-15]

## Easement by Express Grant

Plaintiffs at the time of filing their amended complaint apparently were under the mistaken belief that the 1941 deed of right-of-way from Hattie Gerhard to Homer Gerhard (Plaintiffs Exhibit No.26) was a grant of easement rights by Hattie to Homer in what is now known as Meyers Drive. It is clear Plaintiffs were wrong. The 1941 grant was for a south/north right-of-way from Quakake Road along the western side of the 40 acre tract. The easement Plaintiffs claim in Meyers Drive runs in a west/east direction from Wetzel Run Drive and is across the northern end of the 68 acre tract, not the western edge of the 40 acre tract. As significant, if not more, is that this grant gives Defendants, as the owners of the 68 acre tract, the right to cross the western edge of the 40 acre tract, not vice versa, and therefore is of no benefit to Plaintiffs who seek to cross Defendants' property.

## Easement by Estoppel

This theory, apparently advanced by the Witners only, appears to proceed on the basis that Defendants are estopped from denying an easement in Meyers Drive because the Witners relied on the existence of a right to use Meyers Drive when they purchased their property and thereafter expended money preparatory to building a home. The problem with this theory is that neither the facts nor the law support it.

[FN-28-15]

19

"An easement by estoppel - traditionally considered an irrevocable license in Pennsylvania - will arise when a landowner permits a use of property under circumstances suggesting that the permission will not be revoked, and the user changes his or her position in reasonable reliance on that permission." Kapp v. Norfork Southern Railway Co., 350 F.Supp.2d 597, 611-12 (M.D.Pa. 2004). *See also* Bieber v. Zellner, 220 A.2d 17, 19 (Pa. 1966) ("A license to use the promisor's land will become irrevocable for the duration of the license term when the promisee in justifiable reliance treats his land in a way he would not otherwise treat it, that is, by making expenditures of money for such changes as would prevent his being restored to his original position.").

As to Defendants' actions, no evidence was presented of any oral or written representations made by any of the Defendants to Plaintiffs which authorized the use of Meyers Drive. At most, as discussed with respect to Plaintiffs' claim for a prescriptive easement, given the familial relationship between the parties, the owners of the 40 acre tract were allowed to use Meyers Drive as a courtesy. No evidence was presented, such as the formal grant of easement from Hattie to Homer in 1941, that this was ever intended to be anything more. The Witners have pointed to no conduct attributable to the Defendants which

suggests that this accommodation was or would become irrevocable.

Nor was there any evidence of any conduct by the Defendants which the Witners reasonably relied upon to their detriment so as to estop the Defendants from revoking the permissive use. The Witners purchased their property in 2010 and 2011. This was after Defendants erected the gate in October 2009, as were all the other expenditures the Witners claim to have made. (Plaintiffs Exhibit Nos. 50 and 51). Many of these expenditures were also incurred after Rachel Witner learned from her friend, Tiffany Titus, Defendant Kyle Titus' daughter, in May 2011 that Mr. Titus would not consent to the Witners using Meyers Drive to access their property and to transport construction materials and equipment; after Plaintiffs filed suit on June 21, 2011; and after Plaintiffs had been arrested by Defendants for trespassing on Meyers Drive on July 4, 2011. These circumstances preclude a finding of detrimental reliance.

## CONCLUSION

"When a right or title is of ancient origin or where the transaction under investigation is so remote as to be incapable of direct proof. . . the law, of necessity, relaxes the rules of evidence and requires less evidence to substantiate the fact [in] controversy." Tomlinson v. Jones, 557 A.2d 1103, 1104

(Pa.Super. 1989) (citation and quotation marks omitted). This is of course true and has obvious bearing on this case where the transactions and conduct in question are more than seventy-five years old and, with respect to the severance of title, one hundred and sixty-two years old. But this relaxation of the rules does not mean we ignore the rules, or engage in supposition or speculation.

When dealing with questions of ancient and adverse use, the law wisely provides that "[i]f all of the elements of adverse [use] other than hostility are established, the element of hostility is implied." Watkins, 775 A.2d at 846. At the same time, the law also wisely accounts for human nature, here, that in the absence of contrary evidence, "[t]he use of the disputed land is deemed permissive when a familial relationship exists." Id. at 847.

As to proof that Meyers Drive existed when title to the subject properties was severed in 1853, there was no direct proof, and little indirect proof, and it defies common sense to believe that Meyers Drive at that time was part of a public road which extended several miles to the east and which was abandoned before the 1885 Beers Atlas was printed, which, it is argued, would explain why no reference to this road appears in the Atlas. If this were the case, not only is the abandonment of the road inexplicable, it makes no sense that none of the deeds

[FN-28-15]

22

for the 68 and 40 acre tracts, which Plaintiffs argue fronted on this road, include the road in their metes and bounds description or even make reference to the road. Yet, this is what Plaintiffs ask us to believe.

Finally, in denying Plaintiffs' relief against Defendants, we do not find that the Witners have no remedy, only that it is not against Defendants on the evidence presented.

BY THE COURT:

_____ P.J.



Wetzel Run Drive

Meyers Drive

Pine Tree Lane Ext.

Kyle Titus

Deborah Pugh

Robert J. Pugh

Brandon Pugh

Grover Gerhard

Rachel Witper

Formerly Nancy Hinkle

Deborah Pugh
52.22 Ac

Dirt Road

Dirt Road

Robert Selert
32.3 Ac

N

Hattie to Homer
Right of Way

Quakake Road

Appendix A



IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA

CIVIL DIVISION

JEREMY D. WITNER AND,                    :
RACHEL A. WITNER, HIS WIFE,              :
ROBERT BRIAN SELERT AND,                 :
MICHELLE A. SELERT, HIS WIFE,            :
    Plaintiffs                           :
           v.                      :    NO. 13-0597
KYLE G. TITUS AND                        :
ALLYSON M. TITUS, HIS WIFE,              :
ROBERT G. PUGH AND                       :
DEBORAH PUGH, HIS WIFE,                  :
ROBERT JOSEPH PUGH,                      :
BRANDON PUGH AND                         :
KAREN PUGH, HIS WIFE,                    :
    Defendants                           :

Cynthia S. Yurchak, Esquire          Counsel for Plaintiffs
Kim Roberti, Esquire                 Counsel for Defendants

## MEMORANDUM OPINION

Nanovic, P.J. - February 8, 2016

By order dated June 26, 2015, following a non-jury trial, we denied Plaintiffs' request for the imposition and recognition of an easement by prescription, by implication, by necessity, by estoppel, and by express grant across Defendants' properties. By agreement of the parties and in accordance with our order dated July 13, 2015, we allowed Plaintiffs until Monday, August 10, 2015, to file post-trial motions to the June 26, 2015 order.

Post-Trial Motions were filed by Plaintiffs on August 7, 2015. Both parties have filed briefs addressing the issues raised in these Post-Trial Motions. In this Memorandum Opinion

we briefly explain our reasons for denying Plaintiffs' Post-Trial Motions.

The factual and procedural background of this case, together with the reasoning for our denial of Plaintiffs' claim of an easement across Defendants' properties, was fully explained in our Memorandum Opinion of June 26, 2015 ("Memorandum Opinion"). Against the background of that Opinion, we address the two issues raised in Plaintiffs' Motion for Post-Trial Relief.

## Prescriptive Easement

Plaintiffs first claim that our denial of their claim for an easement by prescription across Defendants' properties was in error because we looked at the wrong twenty-one year period in determining whether Plaintiffs had established a prescriptive easement.

Plaintiffs claim that they obtained an easement by prescription in the area where Meyers Drive is now located to cross Defendants' properties as a means of access to Wetzel Run Drive, a public road.[1] In our Memorandum Opinion of June 26, 2015, we explained that Defendants' properties were at one time

---

[1] Meyers Drive, as it presently exists, is a private road with a 20 foot right-of-way cutting across the northern edge of Defendants' properties and providing Defendants with access to their properties from Wetzel Run Road. The condition and width of Meyers Drive is vastly improved from the narrow dirt farmers' lane existing prior to 1940 on which Plaintiffs base their claim for a prescriptive easement. Nevertheless, for ease of reference, we frequently refer in this opinion to the disputed area as being Meyers Drive.

part of a 68 acre tract of land owned by John Homer Gerhard ("Homer") and that Plaintiffs' properties were all part of a 40 acre tract of land owned and farmed by Hattie Gerhard ("Hattie"). This 40 acre parcel lies to the immediate east and adjacent to the 68 acre parcel. What is now known as Meyers Drive is a private road which intersects Wetzel Run Drive near the northwest corner of the 68 acre tract and crosses the entire width of this 68 acre tract along its northern boundary line where it ends at the western boundary line of the 40 acre tract. This is all depicted in Appendix "A" attached to our June 26, 2015 Memorandum Opinion.

An easement by prescription requires proof of adverse, open, notorious, continuous, and uninterrupted use of another's land for a period of twenty-one years. With respect to these elements, Plaintiffs established that a dirt path or road in the same area where Meyers Drive is now located existed in the late 1930s along the edge of a farmer's field. This path was part of a network with other dirt roads which existed along the edges of farming fields on the 68 and 40 acre parcels, as well as on surrounding properties. These roads were used for moving farming equipment between fields and also by the farmers and their families for traveling between properties and as shortcuts for gaining access to public roads. We also noted in our Memorandum Opinion that some of these roads were plowed under yearly, while

others, such as Meyers Drive, were more permanent in nature "due to the frequency with which they were used and their destination." (Memorandum Opinion, p.4).

We accepted Plaintiffs' evidence that since the late 1930s until the present time, the use of Meyers Drive has been continuous, open, visible, and uninterrupted. (Memorandum Opinion, p.5). We also found, however, that during the twenty-one year period between March 1, 1940, and August 19, 1961, the owners of the 68 and 40 acre tracts were related to one another and that such relationship raised a presumption that the use of Meyers Drive by the owner of the 40 acre tract was permissive. (Memorandum Opinion, p.12).[2] Plaintiffs argue that we erred in in examining this period, that by 1940 adverse usage of Meyers Drive by the owners of the 40 acre tract for a period of twenty-one years had already been established, and that once

---

[2] Plaintiffs correctly state in their Post-Trial Motions that we erred factually on page 11 of the Memorandum Opinion in stating that the 68 acre tract was acquired by Homer's grandparents, John and Mary Gerhard, on March 1, 1940, and that they later transferred this property to Homer on November 10, 1941. In reviewing the exhibits, the 68 acre tract was conveyed to John Homer Gerhard and his wife, Mary R. Gerhard, by deed dated March 1, 1940 from Coxe Brothers & Company, Inc., not to Homer's grandparents, John Gerhard and Mary Gerhard. (Plaintiffs Exhibit No. 20). A second deed dated November 10, 1941, from John Homer Gerhard and his wife, as grantors, conveys this property, with other lands, to John Homer Gerhard, as grantee, in Deed Book Volume 133, page 129. (Plaintiffs Exhibit No. 5).
  While acknowledging this error, it is immaterial to the purpose for which it was cited, that the familial relationships between the owners of the 68 and 40 acre tracts was indicative of a permissive, rather than an adverse, use. Whether Homer's grandparents owned the 68 acre tract for the period between March 1, 1940 and November 10, 1941, or whether, more accurately, Homer first acquired ownership of the 68 acre tract at an earlier time, March 1, 1940, rather than November 10, 1941, either way, both the 68 acre tract and the 40 acre tract were owned by relatives of one another during the same time period referred to in the Memorandum Opinion.

established, a subsequent familial relationship between the owners of the properties involved would not extinguish the easement. We agree with Plaintiffs' logic, but disagree that the evidence supports the existence of a prescriptive easement before 1940.

Eugene Gerhard, Hattie Gerhard's son, testified that his earliest recollection of the dirt road was when he was eight or nine years old, and also that the road has been open and visible since he was nine years old. (N.T., 8/28/14, pp. 13, 40). Since Eugene Gerhard was born on June 19, 1928, this dates his recollection of the road to either 1936 or 1937. At best, Eugene Gerhard's testimony points to the existence of the road approximately four years before both tracts were owned by the same family members.

Eugene Gerhard's testimony did not establish how long the road was in existence or when the use of this road by the owners of the 40 acre tract began or under what circumstances: was it adverse or permissive. Nor did Eugene Gerhard's testimony establish that the use of the road by the owners of the 40 acre tract was continuous, open, visible, and uninterrupted for a period of at least twenty-one years before 1940. To claim, as Plaintiffs do, that the road existed and was being used by Hattie's husband, Samuel Gerhard, as early as 1913, the year in which he acquired ownership of the 40 acre tract, is at best

optimistic speculation on Plaintiffs' part. It is not supported by the evidence, especially when the nature and circumstances of this dirt road and the other dirt roads with which it was connected is taken into account: the roads were located along the edges of farmers' fields primarily to allow the farmers to move their equipment from one field to another; the location of these roads often changed as the fields were farmed each year, at times being totally farmed under; and the roads were easily created and just as easily torn up.

Not only would it be inappropriate to presume that the use of Meyers Drive before 1940 was adverse and hostile, what evidence was presented on this issue is contrary to such a finding. Specifically, Eugene Gerhard testified that it was common at the time of his youth for adjoining property owners and others in the neighborhood to work with one another and to cross one another's property in getting from one location to another (N.T. 8/28/14, pp.18, 38, 78), and that Homer often crossed Hattie's property in going from one field to another, and Eugene's family often crossed Homer's property in going from one field to another. (N.T. 8/28/14, pp.85-86). Eugene Gerhard further testified that before Homer acquired the 68 acre tract in 1940 on which Meyers Drive is located, the property was owned by the Coxe Brothers, that his family rented this property from Coxe Brothers and farmed it, and that their use of the property

was permissive. (N.T., 8/28/14, pp.34, 41-42, 65, 68). Accordingly, when all of the record evidence is taken into account, not just that reproduced by Plaintiffs for their Post-Trial Motions, we believe the weight of the evidence supports and justifies our conclusion that a prescriptive easement was not established.

## Easement by Implication

Plaintiffs also contend that we erred by not finding that an easement by implication exists over Meyers Drive. Plaintiffs refer to the testimony of both Eugene Gerhard and Robert Selert regarding their observations of what they believe are the remnants of an abandoned road running east from the present course of Meyers Drive towards State Route 93. (N.T., 8/28/14, pp.21-24, 79-81, 91-93, 126-27, 129-33). Eugene Gerhard also testified that Homer told him that Meyers Drive at one time extended as far east as Route 93. (N.T., 8/28/14, pp.31-32). Plaintiffs also submitted into evidence deeds concerning their properties and a map of their properties and the surrounding area from the 1885 Beers Atlas. Plaintiffs further argue that Defendants presented no evidence to rebut their contention that an easement by implication exists upon Meyers Drive.

Plaintiffs bore the burden of proving an easement by implication at trial. In our Memorandum Opinion we determined Plaintiffs did not meet this burden. We found that Plaintiffs

had not proven the second element of an easement by implication: that, before the separation of title of properties held in common ownership, the use which gives rise to the easement, shall have been so long continued, and be so obvious or manifest, as to show that it was meant to be permanent. *See* Bucciarelli v. Delisa, 691 A.2d 446, 449 (Pa. 1997). As stated on page 16 of our Memorandum Opinion:

> [The Plaintiffs'] evidence does not prove that at the time title [to the 68 and 40 acre tracts] was severed [in 1853], the critical point of our analysis, there existed an open, visible, continuous and permanent use of Meyers Drive, or that such use was necessary to the beneficial enjoyment of the 40 acre tract. To the contrary, no evidence or testimony was presented as to how the 68 and 40 acre tracts were used in relation to one another – or even what use was made of these properties – by Dennis Bauman before the 1853 conveyance to John Steiner. Moreover, Plaintiffs' contention that Meyers Drive proceeded in an easterly direction to intersect with what is now State Route 93 is not supported by the credible evidence. *See* Plaintiffs Exhibit No.38 (1885 Beers Atlas) which, while depicting Wetzel Run Drive, contains no reference to Meyers Drive or any other public road at this location extending to State Route 93.

Additionally, as we concluded on pages 22 and 23 of the Memorandum Opinion:

> As to proof that Meyers Drive existed when title to the subject properties was severed in 1853, there was no direct proof, and little indirect proof, and it defies common sense to believe that Meyers Drive at that time was part of a public road which extended several miles to the east and which was abandoned before the 1885 Beers Atlas was printed, which, it is argued, would explain

why no reference to this road appears in the Atlas. If this were the case, not only is the abandonment of the road inexplicable, it makes no sense that none of the deeds for the 68 and 40 acre tracts, which Plaintiffs argue fronted on this road, include the road in their metes and bounds description or even make reference to the road.

After reviewing Plaintiffs argument on this issue, we see no reason to change our decision.

Accordingly, for the reasons stated, Plaintiffs' Motion for Post-Trial Relief has been denied.

BY THE COURT:

_____
P.J.